UNITED STATES DEPARTMENT OF ENERGY, Appellant,

v.

WEST TEXAS MARKETING CORPORATION, Appellee.

No. 5–111.

Temporary Emergency Court of Appeals.

Argued Jan. 4, 1985.

Decided March 27, 1985.

Submitted on the Briefs.

Decided May 14, 1985.

Larry P. Ellsworth, Dept. of Energy, Washington, D.C. with whom Thomas C. Newkirk, Jerome Wiener, David A. Engels, Arthur S. Weissbrodt and Patricia D. Graham, Washington, D.C., of the same agency, were on the brief for appellant.

David R. Snodgrass, Gardere & Wynne, Dallas, Tex., with whom Philip J. Nicholsen and H. Martin Gibson, Dallas, Tex., of the same firm, were on the brief for appellee.

Before CHRISTENSEN, ESTES and SEAR, Judges.

## MEMORANDUM DECISION

SEAR, Judge.

The Department of Energy ("the DOE") appeals from the July 26, 1984 order of the district court adopting the opinion and affirming the June 21, 1983 decision of the bankruptcy judge in the bankruptcy case for the reorganization of West Texas Marketing Corporation ("WTMC") pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*[1] The bankruptcy judge ordered that the DOE's claim be subordinated in distribution pursuant to 11 U.S.C. § 726(a)(4), but did not finally determine the amount, if any, of the DOE's claim that would be allowed. Consequently, the order is not final within the meaning of 28 U.S.C. § 158(d) and this court therefore lacks jurisdiction to hear this appeal.

The DOE filed a proof of claim November 23, 1982 in the bankruptcy proceeding to recover overcharges allegedly made by WTMC in certain resales of crude oil. The proof of claim was supported by a proposed remedial order issued by the DOE to WTMC pursuant to the DOE's authority under the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751 *et seq.* ("the EPAA") and 10 C.F.R. § 205.-192.[2] That proposed order directed WTMC to pay the DOE $16,360,315.48 plus interest in the amount of $6,875,397.23 for violations of 10 C.F.R. § 212.186 which prohibits

---

1. Although the proceeding in which the DOE initially asserted its claim was for the reorganization of WTMC under Chapter 11, the trustee's efforts to reorganize WTMC failed, and the proceeding was converted to one for the liquidation of WTMC under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, by order of the bankruptcy judge dated December 7, 1983. To avoid confusion, the case before the bankruptcy judge will hereafter be referred to as "the bankruptcy proceeding."

2. The proposed remedial order issued by the DOE to WTMC is not binding on WTMC unless and until it has been adopted by the DOE's Office of Hearings and Appeals ("the OHA"), and reissued as a final remedial order. The DOE may request the OHA to issue its proposed remedial order as a final remedial order if no objection is made. 10 C.F.R. § 205.193. If objection is made, the OHA may, after further proceedings, issue a final remedial order adopting, modifying or rescinding the findings and conclusions contained in the DOE's proposed remedial order, or may determine that no final remedial order should be issued, or may remand all or a portion of the proposed remedial order to the DOE for further consideration or modification. 10 C.F.R. § 205.199B(a).

certain resales of crude oil. In the alternative, if that violation is not sustainable on review, then the DOE demands $15,929,-596.53 plus interest in the amount of $6,683,344.99 for transactions which "circumvented and contravened the certification regulation at 10 C.F.R. § 212.131." Stipulated Record at 5–6, 23–25.

The trustee in the bankruptcy proceeding, appointed by the bankruptcy judge on December 3, 1982, filed an objection to the DOE's proof of claim on the ground that it was time-barred by Interim Bankruptcy Rule 3001. In the alternative, the trustee moved for the subordination of the DOE's claim on three grounds: (1) pursuant to 11 U.S.C. § 726(a)(4) because it was in the nature of a penalty unsupported by pecuniary loss; (2) pursuant to 11 U.S.C. § 510(c) under the principles of equitable subordination; and (3) pursuant to § 726(a)(3) because the proof of claim was not timely filed.[3]

The bankruptcy judge found that the DOE's claim was timely filed and ordered that the DOE's claim "in any amount allowed" be subordinated in distribution pursuant to 11 U.S.C. § 726(a)(4). In his order, however, the bankruptcy judge permitted the Trustee

a period of sixty days to determine whether he will challenge the *amount* of the DOE claim and if he has not so filed a written challenge to the amount of the claim within such period of time on the 22nd day of August, 1983, the proof of claim of DOE will be allowed in the amount of $22,612,941.52.

Stipulated Record at 316 (emphasis in text). The trustee's motion for the equitable subordination of the DOE's claim under 11 U.S.C. § 510(c) was therefore pretermitted.

The record contains no indication whether the trustee did in fact challenge the DOE's claim or whether the claim has been allowed or disallowed by the bankruptcy judge. However, at oral argument, both parties agreed that the trustee had indeed filed in the bankruptcy proceeding an objection to the amount of the DOE's claim and that the amount claimed by the DOE had not yet been allowed or disallowed.

The order from which the DOE appeals was entered by the district court on July 26, 1984,[4] following enactment of

---

**3.** The DOE states in its brief that Bankruptcy Rule 7001 requires that actions to subordinate claims be brought in an adversary proceeding through the filing of a complaint and that "apparently through an oversight, the action seeking subordination of the [DOE's] claim was filed in the form of a motion." DOE Brief at 20 n. 25. Bankruptcy Rule 7001, however, did not become effective until August 1, 1983, which was subsequent to the decision of the bankruptcy judge. Moreover, the Suggested Interim Bankruptcy Rules did not define those proceedings which constituted "adversary proceedings," and which could be initiated only by the filing of a formal complaint. *See* Interim Rules 7001, 7002. (The Interim Bankruptcy Rules were provided to the bankruptcy courts in 1979 by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States, which suggested that they be adopted as local rules. The Interim Rules had been drafted by the Committee's Reporters and were intended to serve until the Committee could promulgate final Rules of Bankruptcy for adoption by the Supreme Court and by Congress. The Interim Rules were in fact adopted by most courts. *In re Pacor, Inc.,* 743 F.2d 984, 986 n. 2 (3d Cir. 1984).) However, when Congress enacted the Bankruptcy Reform Act of 1978, it provided that

the existing rules, to the extent they were not inconsistent with that Act, were to remain effective until they were "repealed or superseded" by new rules. Pub.L. No. 95–598, Title IV, § 405(d), 92 Stat. 2685 (1978). Under the bankruptcy rules in effect at the time the trustee's motion was made, an attempt to have a claim subordinated was not defined as an adversary proceeding in either liquidations or reorganizations. *See* Bankruptcy Rules 8–601 (liquidations) and 10–701 (reorganizations). Rather, those rules expressly provided that "[i]n a contested matter in a [liquidation] case not otherwise governed by these rules, *relief shall be requested by motion....*" Bankruptcy Rule 8–705. (Emphasis added). Consequently, the motion to subordinate the DOE's claim filed by the trustee was procedurally proper and a formal complaint initiating an adversary proceeding was not necessary.

**4.** The DOE contends that the issue presented for appeal is whether the DOE's claim for overcharges under section 209 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note ("the ESA") is a claim for a penalty. The DOE, however, did not assert its claim pursuant to Section 209 of the ESA. The proposed remedial order states that it was issued pursuant to 10 C.F.R.

the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Amendments").[5] Section 104(a) of the 1984 Amendments, codified at 28 U.S.C. § 158, governs appeals from decisions of bankruptcy judges and district courts in cases arising under the Bankruptcy Code. Title 28, section 158 provides:

> (d) The courts of appeals shall have jurisdiction of appeals from all *final* decisions, judgments, orders, and decrees entered under subsections (a) [providing for appeal to the district court from certain decisions of bankruptcy judges] and (b) [providing for appeal, upon consent of the parties, to panels of bankruptcy judges from decisions of bankruptcy judges] of this section.

28 U.S.C. § 158 (emphasis added). Since this court's jurisdiction over appeals from the decisions of district courts in cases or proceedings arising under title 11 extends only to those district court decisions which are "final," our first responsibility is to determine whether the order appealed from is "final." *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 380, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981) ("if an appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over"); *see also Petraco-Valley Oil & Refining Co. v. U.S. Department of Energy,* 633 F.2d 184 (Em.App.1980) (dismissing appeal because district court order was not final). Although the question of the finality of the district court's order was not raised by either of the parties, it is well settled that appellate courts are nevertheless obliged to consider the issue *sua sponte. See, e.g., Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *In re Pacor, Inc.,* 743 F.2d 984 (3d Cir. 1984); *In re American Mariner Industries, Inc.,* 743 F.2d 426, 428 (9th Cir.1984); *In re Bestmann,* 720 F.2d 484, 486 (8th Cir.1983); *see Pettinelli v. Danzig,* 644 F.2d 1160, 1161–62 (5th Cir.1981).

■ There are few appellate cases that have examined the final decision requirement of 28 U.S.C. § 158(d), but those cases suggest that the 1984 Amendments which enacted § 158(d) made no change in the standard for determining whether an order in a title 11 case is final and therefore appealable. One court of appeals found:

> nothing in the 1984 amendments that changes the scheme adopted in 1978.... Compare 28 U.S.C. §§ 1293(b), 1334(a), (b), added by the 1978 Act, with 28 U.S.C.

§ 205.192. Stipulated Record at 6. That regulation was issued pursuant to the DOE's authority under the EPAA to investigate and prosecute violations of the petroleum price-control regulations, rather than section 209 of the EPAA. *See* 15 U.S.C. §§ 753(a), 754(b) (creating regulatory authority and permitting delegation of that authority by the president); 42 U.S.C. § 7151 note (establishing the DOE); Executive Order 12009 (42 F.R. 46267) (delegating authority to the DOE pursuant to the EPAA, 15 U.S.C. § 754(b)). Indeed, the DOE could not pursue a claim for overcharges against WTMC under section 209 of the ESA because that section confers no authority on the DOE to seek overcharges directly from violators. That section, together with 10 C.F.R. § 205.204, merely enables the DOE, as the authorized representative of the President, to seek injunctions or other relief from the district court:

> Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this

title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, *the court* may also order restitution of moneys received in violation of any such order or regulation.

ESA § 209, 12 U.S.C. § 1904 note (emphasis added). *See* 10 C.F.R. § 205.204 (authorizing the DOE to request the Attorney General to bring an action in district court for an injunction or other relief). The DOE has not sought an injunction or any other relief from a district court in this case, and no district court has issued such an order. Hence, section 209 of the ESA cannot be the basis for the DOE's proposed remedial order and its corresponding claim in the WTMC bankruptcy proceeding.

5. Pub.L. No. 98–353, 98 Stat. 333 (codified at scattered sections of 11 U.S.C. and 28 U.S.C.).

§ 158, added by the 1984 act. The relevant provisions appear to be identical except for immaterial wording changes.[6] *In re Riggsby*, 745 F.2d 1153, 1154–55 (7th Cir.1984). Other courts have reached the same conclusion. *See In re Pacor, Inc.*, 743 F.2d 984, 987 n. 4 (3d Cir.1984) ("[w]e do not believe that the particular changes, terminology, and renumbering of sections make substantive changes in the statutes as we interpret them in this opinion."); *see In re Dahlquist*, 751 F.2d 295, n. 3 (8th Cir.1985) ("[t]he jurisdictional question here at issue would be the same under § 158 as it is under § 1293; whether the order ... is a final order for purposes of appellate review"). This conclusion is strengthened by the absence of any indication in the legislative history of the 1984 Amendments that Congress intended title I of that Act to do anything more than correct the constitutional deficiency of the 1978 Act identified by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See generally* Legislative History of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 1984 U.S.Code Cong. & Ad.News 576, 579–606; H.Rep. No. 882, 98th Cong., 2d Sess. (1984) (conference report); *see also In re*

*Pacor, Inc.*, 743 F.2d 984, 987, n. 4 (3d Cir.1984) ("the 1984 Act 're-enact[s], with minor technical amendments [the] provisions of the 1978 Act relating to venue and removal of bankruptcy cases and proceedings' " (citations omitted)). We conclude that the jurisdiction of the courts of appeals over appeals in cases and proceedings arising under title 11 remains the same under § 158(d) as it was under its predecessor, 28 U.S.C. § 1293(b) (effectively repealed July 10, 1984).[7]

Courts that have examined § 1293 recognize that in matters arising under title 11, appeal may be taken from other than case dispositive decisions. *See In re Ellsworth*, 722 F.2d 1448 (9th Cir.1984); *In re Mason*, 709 F.2d 1313 (9th Cir.1983). They have found that decisions that conclusively determine a separable dispute, such as the allowance or disallowance of a claim, are final decisions within the meaning of the statute. *See In re Saco Local Development Corp.*, 711 F.2d 441, 444–45 (1st Cir.1983); *see, e.g., In re Bestmann*, 720 F.2d 484, 486 (8th Cir.1983). The test for determining finality of these discrete decisions that are not case dispositive is the same as that applied to case dispositive matters in bankruptcy under § 1293 and to non-bankruptcy cases under § 1291.[8] That

---

**6.** The section replaced by 28 U.S.C. § 158 was 28 U.S.C. § 1293(b), which provided:

> (b) Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District Court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.

Added by Pub.L. No. 95–598, § 236(a), 92 Stat. 2667 (1978) (effectively repealed July 10, 1984).

**7.** Section 1293, however, was never formally effective. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978), which repealed the Bankruptcy Act of 1898, added section 1293 but delayed its effective date. Until that date, title IV of the 1978 Act, Pub.L. No. 95–598, §§ 401–411, 92 Stat. 2682–2688 (1978), *as amended by* Pub.L. No. 98–325, § 1(a), 98 Stat. 268 (1984), provided for a "transition period" during which jurisdiction to hear appeals was conferred on the courts of appeals "the

same as the jurisdiction" granted by 28 U.S.C. § 1293. *See* Pub.L. No. 95–598, § 405(c)(2), 92 Stat. 2685 (1978) (codified at 28 U.S.C. note preceding § 1471). The 1984 Amendments, however, did not expressly repeal § 1293. *See* 1984 Amendments §§ 113 and 121(a). If there is any ambiguity in how Congress disposed of § 1293, it is clear that § 1293 was implicitly repealed by the enactment of 28 U.S.C. § 158. *See In re Riggsby*, 745 F.2d 1153, 1155 (7th Cir.1984) (they "are worded virtually the same, and appear to have the same meaning, so that although the 1984 amendments do not expressly repeal section 1293(b), we think they must be held to do so by implication...." (citation omitted)); *In re Exclusive Industries Corp.*, 751 F.2d 806, 807 & n. 1 (5th Cir.1985).

**8.** 28 U.S.C. § 1291 states:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States.

. . . . .

test, with two exceptions, has been consistently interpreted to preclude appeal until "there has been 'a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[9] *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 51 L.Ed.2d 351 (1978)). *See In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984); *In re Tidewater,* 734 F.2d 794 (11th Cir.1984); *see e.g., In re Saco Local Development Corp.,* 711 F.2d 441, 448 (1st Cir.1983) (decision conclusively determined a separable dispute because it "effectively settle[d] the amount due to the creditor"); *In re Ellsworth,* 722 F.2d 1448, 1450 (9th Cir.1984) ("[a]ll that was left to be done was to enforce [the creditor's] adjudicated rights in due course of the bankruptcy proceeding ..."); *In re Bestmann,* 720 F.2d 484, 486 (8th Cir.1983) ("[t]he order of the Bankruptcy Court fully determines all rights to the proceeds of the [property]").

Whether the DOE has appealed from a "final" decision turns on the character of the bankruptcy judge's decision as well as that of the district court. This is because 28 U.S.C. § 158(a) permits the district courts to hear appeals from interlocutory decisions of the bankruptcy judge. Such decisions, however, are not final for the purpose of further appeal to the courts of appeals. *In re Riggsby,* 745 F.2d 1153, 1154 (7th Cir.1984); *see In re Tidewater Group, Inc.,* 734 F.2d 794 (11th Cir.1984) and the cases cited therein (all reaching the same conclusion with respect to appeals taken under 28 U.S.C. § 1293(b)); *In re Mason,* 709 F.2d 1313, 1315 (9th Cir.1983).

In this case, the bankruptcy judge's order permitted the trustee to file an objection to the amount of the DOE's claim, thereby creating the possibility—realized when the trustee filed an objection—that further proceedings would be necessary to determine the DOE's claim. The amount owed the DOE will not be conclusively determined until the DOE's claim has been either allowed or disallowed. The order from which the DOE appeals therefore did not fully determine any party's rights with respect to the moneys claimed by the DOE. Consequently, the bankruptcy judge's decision is not final within the meaning of 28 U.S.C. § 158(d).

The bankruptcy judge's decision also fails to qualify for immediate appeal under the collateral order exception of the final judgment rule of 28 U.S.C. § 1291, assuming without deciding that that exception also applies to appeals under 28 U.S.C. § 158(d). For immediate appeal under this exception, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). The bankruptcy judge's order did not conclusively determine the dispute regarding the DOE's claim. Moreover, the order may be reviewed on appeal from the bankruptcy judge's decision allowing or disallowing the DOE's claim; hence, this order is not "effectively unreviewable on an appeal from final judgment." *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at 468, 98 S.Ct. at 2457. Therefore, this Court lacks jurisdic-

---

**9.** The two exceptions are: (1) the collateral order doctrine, *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (to qualify as a collateral order subject to immediate review, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable

on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)); and (2) the *Forgay-Conrad* rule, *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) (order directing the delivery of property treated as final and appealable if irreparable harm would result from delay in appeal).

tion to consider the DOE's appeal and the appeal should be dismissed.[10]

APPEAL DISMISSED.

Concurring opinions filed by Judges CHRISTENSEN and ESTES.

CHRISTENSEN, Judge, specially concurring.

I concur with the result of Judge Sear's scholarly opinion, and essentially in its reasoning. To supplement the primarily technical treatment there involved, I would make some additional observations concerning the practicalities of the situation; and I find it importantly necessary to deal aside from the question of finality of the lower court's decision with an issue of the jurisdiction of this court, itself, which was briefed and argued by the parties but which Judge Sear has chosen not to address.

I

While more recently emphasizing the "finality" requirement theretofore established by Congress for appeals, and the vice of circumventing restrictions imposed by the Interlocutory Appeals Act of 1958, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Supreme Court has long recognized that it is impossible to devise a precise formula to resolve all marginal cases and that the requirement of finality is to be given a practical rather than a technical construction. *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

But whether the question of appealability is considered from a technical or a practical standpoint the result should be the same in this case. Viewed from the for-

mer, the issue is not even marginal, for the elements of amount, priority and allowability of the claim are integral parts of a core issue in bankruptcy. With the lower court still having under consideration at least one and in essence perhaps two of these elements, its order dealing with only the third seems so basically interlocutory as to render the consideration of additional practicalities somewhat gratuitous.

Concerning the practicalities of the situation in general, however, I accept Judge Becker's excellent analysis for the Court in *Marine Petroleum Co. v. Champlin Petroleum Co.*, 657 F.2d 1231 (Em.App.1980), as a suitable frame of reference. With due consideration for the *Cohen* doctrine, we held that an order denying DOE's motion for its dismissal as a party was immediately appealable without certification as an interlocutory appeal because the order appealed from was a final disposition of a claimed right which was not an ingredient of the cause of action; it did not require consideration with that cause of action; even if DOE could have taken an appeal from the final judgment, that would not have provided a remedy since for all practical purposes the order denying its dismissal was final, and the claim of DOE was separable from and merely collateral to rights asserted in the main action. In the attempted appeal now before us the right in question is an ingredient of the core issue concerning the allowances of DOE's claim, which can be meaningfully disposed of finally only by a determination of both its amount and priority. We are agreed here that an appeal will lie from the allowance or disallowance of DOE's claim, at which time the question of its priority as well as its amount can be reviewed. The question of priority is not separable from and collateral to the question of allowance.[1]

---

**10.** Because I have determined that this court has no jurisdiction to consider this appeal from a non-final decision, I have not considered *any* issue raised in this appeal. That I have not responded to the comments of my brothers Christensen and Estes should not be construed as acquiescence in their opinions.

**1.** I find Judge Becker's observation in the later case of *Petraco-Valley Oil v. U.S. Dept. of Energy*, 633 F.2d 184, 198–99 (Em.App.1980), pertinent to the circumstances now before us:

The interlocutory order of the District Court clearly does not fall within this class of decisions appealable under § 1291, first defined in *Cohen v. Beneficial Industrial Loan Corp.*,

Moreover, any practical disadvantages of a delay in reaching the merits which were noted in *Marine Petroleum* will not be present here; there is no possibility that DOE can receive a distribution until the bankruptcy court rules on the issue of allowance, including amount.

There are other practicalities. It remains possible that there will be a new appeal on the question of amount as well as priority. To fragment such an appeal by premature consideration of a part, offers little, if any, hope for the conservation of judicial resources. Indeed, the bankruptcy court's failure to discuss the significance of statutory and regulatory provisions concerning restitutionary as distinguished from penalty procedures under the Emergency Petroleum Allocation Act and our related decisions, the considerable amount of other litigation now before the district courts and this court involving the various programs of DOE for restitution of overcharges in which only the identification of beneficiaries rather than the restitutionary character of DOE's recoveries is questioned and the substantial concession of appellee during oral argument that individual reimbursement of those suffering actual damage would negate the basis for its penalty position, could lead to a reconsideration or modification of the present interlocutory decision before any further appeal.[2]

## II

■ Citing *Firestone Tire & Rubber Co. v. Risjord, supra*, for the proposition that "[i]f an appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over," Judge Sear avoids a discussion of the sole grounds upon which our jurisdiction has been questioned by any party in this case. In *Firestone*, however, the only jurisdictional point raised was that involving a lack of finality of the judgment from which an appeal was being attempted, and there was no question as to the competency of the court to review the judgment had it

---

*supra*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The interlocutory decision of the District Court denying the motion for a temporary injunction, meets none of the tests of the *Cohen* case. It did not "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" as described in the *Cohen* case, *supra*. The decision in question was not a final determination. It was not separable from and collateral to rights asserted in the action; on the contrary, the interlocutory relief sought was the same as that sought in a final judgment in the action. If the relief is denied in a final judgment, an appeal of right under § 1291 would lie. [Citations omitted.]

**2.** By this we do not mean to be understood as saying that restoration of overcharges to precisely identified individuals is the *sine qua non* of restitution, for to do so would be inappropriately to ignore the massive congressional, administrative and judicial action that is now in progress better to insure maximum individual reimbursement for loss and, where that is impractical, appropriate reimbursement to the general class found to have been adversely affected. The additional insights being gained by the parties are indicated by supplemental mate-

rial submitted to the Court following oral argument. This case in its present posture does not provide a suitable occasion to consider and document whether these commensurate or class restorations, as well as individual reimbursements, also are restitutionary rather than penal in character for the purposes of the Bankruptcy Act. Even though error in an interlocutory ruling appears plain, it would furnish no justification to disregard the finality requirement otherwise applicable. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). The point that is germane now is that in view of the additional light on the problem of restitution for overcharges which is so rapidly being developed, it becomes all the more inappropriate to deprive the lower court of the additional information pending its final decision on the allowance of the claim in question.

The confusion pointed out by Judge Sear in DOE's brief, n. 4, concerning reliance upon § 209 of the Economic Stabilization Act of 1970 is more apparent than real. This court has never questioned the authority of DOE to directly order restitution and has looked to § 209 to demonstrate one of the bases of that power. *Sauder v. Department of Energy*, 648 F.2d 1341, 1348–49 (Em.App.1981); *Bonray Oil Co. v. Department of Energy*, 472 F.Supp. 899 (W.D.Okl. 1978), *aff'd per curiam*, 601 F.2d 1191 (Em.App. 1979).

been final. A court has the prerogative of both discussing and deciding questions concerning its own jurisdiction, and if there should be any order of discussing multiple jurisdictional points, it seems to me that first and most imperatively the question of the competency of the court over the subject matter should be addressed first, for if there is no jurisdiction in that sense, it would be immaterial whether the judgment appealed from is or is not final.

Especially in this case are the parties entitled to have us address, among any other issues of jurisdiction, the only point raised or discussed in the briefs or the argument, to furnish at least some guide should there be occasion for a further appeal and to avoid any possible implications from *sub silentio* treatment that the jurisdiction of this court over the subject matter of the proceedings below is suspect. I believe that an expression on that issue may transcend in importance the other jurisdictional problem raised by Judge Sear which has proved to be dispositive of this particular appeal. This may aid to a degree in the avoidance of abortive or needlessly duplicative appeals in the future [3] not only in this case but in other cases of similar nature of which we are told there could be many. Moreover, in similar vein, we must address a reserved motion based on the discrete ground of our alleged lack of subject matter jurisdiction.

Appellee initially moved for the dismissal of DOE's appeal for lack of jurisdiction in this court on the ground that this is not a case or controversy arising under the EPAA or regulations or orders issued pursuant thereto but rather one arising under the Bankruptcy Act. We directed that such issue be briefed along with the merits, and oral arguments have been heard as to both. In my opinion, appellee's motion to dismiss this appeal on the ground stated should be expressly denied for reasons that follow.

---

**3.** DOE's appeal to this court was timely filed. It appealed also to the Court of Appeals of the Fifth Circuit but that appeal was dismissed as untimely. Order filed December 17, 1984, in No. 84–1884, *West Texas Marketing Corp., Debt-*

In *Bray v. United States*, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975), the Supreme Court stated:

> ... Congress created the TECA and vested it with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under title or under regulations or orders issued thereunder." § 211(b)(2), 85 Stat. 749. This judicial-review provision was designed to provide speedy resolution of cases brought under the Act and "to funnel into one court all the appeals arising out of the District Courts and thus gain in consistency of decision." S.Rep. No. 92–507, p. 10 (1971). The provision thus carved out a limited exception to the broad jurisdiction of the courts of appeals over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.

WTM contends that the issue adjudicated by the bankruptcy and the district courts and the issue actually presented on this appeal is whether "under § 726 of the United States Bankruptcy Code, a claim by the DOE for violation of applicable petroleum pricing regulations should be subordinated in payment to the claims of other creditors of debtor in a bankruptcy liquidation because it is a penalty under applicable bankruptcy law." It says that the order appealed from does not interpret, construe or apply provisions of the EPAA or its regulations "in any manner whatsoever" but merely holds that DOE's claim, if established in accordance with such statutes and regulations, "shall be subordinated in payment to other creditors in the liquidation of the debtor's bankruptcy estate because of the applicable bankruptcy law which would characterize such claim as a penalty or forfeiture for purposes of priority of distribution on claims."

*or, U.S. Department of Energy, plaintiff-appellant v. West Texas Marketing Corporation, Walter Kellog, Trustee for Debtor and David Snodgrass, defendants-appellees.*

The cases cited in support of this argument are either contrary to WTM's position or are distinguishable from the present case where the legal consequences of the claim at issue depend mainly upon an interpretation of the EPAA, its implementation and enforcement in light of the decisions of this court in other cases, and the congressional policy manifested by the federal act.[4]

DOE argues that the WTM motion "fits comfortably" within the plain language of the jurisdictional statute; that it challenges DOE's claim for restitution of overcharges, which arises under the EPAA; that just as a complaint filed under the Declaratory Judgment Act challenging an EPAA claim "arises under" the EPAA and not under the Declaratory Judgment Act, the claim

here "arises under" the EPAA and not under the Bankruptcy Act which merely provides the procedural context in which the critical dispute is involved; that the primary issue decided below and appealed here necessarily involves the EPAA and that WTM's argument that the lower courts did not even address EPAA matters but simply held that under the Bankruptcy Act DOE's claim was a penalty is specious because even the *sub silentio* treatment was an effective determination of the EPAA issue. A review of the pertinent decisions of this court in the light of the governing statute and the circumstances of the present case has proved convincing that DOE's position is well taken.[5]

**4.** *Bray v. United States, supra* (appeal from conviction of criminal contempt under 18 U.S.C. § 401 not within exclusive jurisdiction of TECA although connected with investigation of ESA violations, since the contempt charge initiated a separate and independent proceeding); *United States v. Wyatt,* 680 F.2d 1080 (5th Cir.1982) (issues were not removed from the jurisdiction of TECA simply because they comprehended legal principles beyond the EPAA); *United States v. Uni Oil, Inc.,* 646 F.2d 946 (5th Cir.), cert. denied, 455 U.S. 908, 102 S.Ct. 1254, 71 L.Ed.2d 446 (1981) (although criminal indictments and defenses thereto made use of the EPAA and its regulations, Fifth Circuit had jurisdiction since resolution of the issues did not involve interpretation of substantive provisions of the EPAA); *Coastal States Marketing v. New England Petro.,* 604 F.2d 179 (2d Cir.1979) (TECA had exclusive jurisdiction where issue adjudicated by district court was whether plaintiff had violated the EPAA); *United States v. Zang,* 653 F.2d 493 (Em.App.), cert. denied, 454 U.S. 864, 102 S.Ct. 323, 70 L.Ed.2d 164 (1981) (not within jurisdiction of TECA since determination of whether or not EPAA regulations were violated by appellants would not be dispositive of appeal); *United States v. Zang,* 645 F.2d 999 (Em.App.1981) (fact that criminal indictments included explanation of certain EPAA regulations was held not enough to give rise to TECA jurisdiction); *Texaco, Inc. v. Department of Energy,* 616 F.2d 1193 (Em.App.1979) (question on appeal was not an EPAA issue but one which arose solely under the DOE Act, thus TECA had no jurisdiction); *Spinetti v. Atlantic Richfield Company,* 522 F.2d 1401 (Em.App.1975) (counts of plaintiffs' complaint which charged violations of antitrust and fair trade laws and certain contractual claims were not controversies arising under the ESA); *Associated Gen. Con. Okl. Div. v. Laborers Int. U. Loc.* 612, 489 F.2d 749 (Em.App.1973) (appeal from decision of district

court after remand by TECA was within exclusive jurisdiction of Tenth Circuit Court of Appeals where issue did not involve the ESA); *United States v. Cooper,* 482 F.2d 1393 (Em.App. 1973) (conviction under 18 U.S.C. § 1001 for making certain false representations was not a controversy arising under the ESA even though the matter involved was within the perimeter of activities assigned to and carried on by the Price Commission).

**5.** *See Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,* 567 F.2d 984 (Em.App.1977), cert. denied, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978); *United States v. Thriftyman, Inc.,* 704 F.2d 1240 (Em.App.1983), and *United States v. Phoenix Petroleum Co.,* 727 F.2d 1579 (Em.App. 1984) (passing upon the validity of subpoenas issued by DOE in its investigation of violations of EPAA); *Mobil Oil Corp. v. Dept. of Energy,* 728 F.2d 1477 (Em.App.1983), cert. denied, —— U.S. ——, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984); *Sohio Petroleum Co. v. Caribou Four Corners,* 573 F.2d 1259 (Em.App.1978); *Francis Oil and Gas, Inc. v. Exxon Corp.,* 687 F.2d 484 (Em. App.), cert. denied, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); and *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir. 1978), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979) (construing contracts in the light of the EPAA); *Rainey v. Union Oil Co. of California,* 732 F.2d 1563, 1564, n. 1 (Em.App. 1984) (state law and EPAA claims commingled or interdependent); *Citronelle-Mobile, Etc. v. Gulf Oil Corp.,* 591 F.2d 711 (Em.App.), cert. denied, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979) (breach of contract claim with counterclaim implicating the EPAA); *Mosley v. Nationwide Purchasing, Inc.,* 485 F.2d 418 (Em. App.1973) (construing the venue statute in ESA case); *Energy Reserves Group, Inc. v. Department of Energy,* 589 F.2d 1082 (Em.App.1978)

In *MGPC, Inc. v. Department of Energy*, 673 F.2d 1277 (Em.App.1982), *supra*, Judge Duniway said for the Court:

To decide whether or not we have jurisdiction to hear an appeal, we look to the nature of the issue that is presented to us and not to the nature of the case or controversy presented below. *Gulf Oil Corp. v. Department of Energy*, Em. App., 1981, 639 F.2d 766, 767.

With respect to the subject matter thus defined, and except for a restriction not here relevant, we have the full powers of a circuit court of appeals, 12 U.S.C. § 1904 note, § 211(b)(1). This power includes the power to resolve those subsidiary, procedural and threshold questions—such as mootness, standing and ripeness—that are incidental to questions that are within our jurisdiction, because the power to do so is normal and necessary to the functioning of any appellate court. *Quincy Oil, Inc. v. Federal Energy Administration*, Em.App. 1980, 620 F.2d 890, 893. *See also Department of Energy v. Crocker*, Em. App., 1980, 629 F.2d 1341 (*per curiam*).

In *United States v. Wickland*, 619 F.2d 75 (Em.App.1980), we held that the issue of whether DOE could be estopped from enforcing the subpoena power granted it by the EPAA was an issue arising under the Act and therefore that TECA had exclusive jurisdiction of the appeal of the district court's order requiring compliance with the subpoena. We there expressly rejected the appellant's contention that the case presented only "general legal issues" of estoppel and subpoena enforcement "which the court of appeals can confront without addressing ESA or EPAA questions." *Id.* at 78.

In *United States Dept. of Energy v. Crocker*, 629 F.2d 1341 (Em.App.1980), appellant contended that this court did not have jurisdiction to entertain a petition for

a writ of mandamus because the district court's rejection of DOE's privilege claims "[does] not require any interpretation of, or even reference to, the Emergency Petroleum Allocation Act (EPAA) or to any other statute, regulation or order which would vest TECA with jurisdiction to entertain this Petition." We rejected this contention, stating:

Here the discovery issue may affect the ability of litigants under the EPAA to obtain intra-agency evidence bearing upon the meaning and interpretation of regulations issued pursuant to the Economic Stabilization Act and the Emergency Petroleum Allocation Act. We find, therefore, that, as in *Wickland*, the district court has "adjudicated" an "EPAA issue."

In *Texaco, Inc. v. Department of Energy*, 616 F.2d 1193 (Em.App.1979), *supra*, over the dissent of Judge Hoffman, this court held that where the sole issue on appeal was the district court's holding that the Federal Energy Regulatory Commission had certain review authority and where the propriety of that holding was not a question arising under the EPAA but rather was a question that arose under the Department of Energy Organization Act which contained no jurisdictional grant, the Temporary Emergency Court of Appeals lacked jurisdiction. However, we distinguished that case from cases comparable to the present one:

Despite the existence in the cases of the common law claims for breach of contract, both opinions held that exclusive appellate jurisdiction vested in TECA because practically speaking "the resolution of the litigation in its entirety requires application and interpretation of the EPAA of 1973 as amended September 29, 1975," 591 F.2d at 716. Decision by TECA was deemed appropriate because resolution of the one issue arising

---

(construing the Administrative Procedure Act in connection with a claim under the EPAA); *MGPC, Inc. v. Department of Energy*, 673 F.2d 1277 (Em.App.1982) (discovery and evidentiary hearing issues implicating an EPAA claim before the district court); and *McWhirter Distrib-*

*uting Co., Inc. v. Texaco, Inc.*, 668 F.2d 511 (Em.App.1981) (considering a claim under the Federal Tort Claims Act for alleged tortious violation by DOE of its own regulations instigating an investigation of a supplier, and disposing of the case on the basis of the EPAA).

under the EPAA would resolve the entire case. This assertion of jurisdiction is consistent with the general rule that TECA will not address issues not arising under the EPAA.

*Texaco, supra,* at 1197, n. 2.

In *Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,* and subsequent cases concerning the statute of limitations problem in the EPAA context, *supra,* we determined that unless the policy of the EPAA would be thereby frustrated, state statutes of limitations would be followed since the EPAA contained no limitation provision. In *Ashland* it was stated:

We have concluded that the national policy can best be harmonized with the state statute of limitations by applying the one year bar to Ashland's second claim, and allowing maintenance of the first claim as an action other than for a penalty. Another result, we believe, would be inconsistent with the most persuasive local interpretation of the California statute of limitations. We further are of the opinion that overriding national policy would require us to comport any variance or uncertainty in the California rule to the indicated result.

567 F.2d at 990.

The alternatives in *Ashland* were to apply the California statute of limitations pertaining to a claim for a "penalty or forfeiture" or applying a longer period on the theory that the claim was an action "other than for a penalty or forfeiture." Upon this very distinction we held that the penalty bar was applicable to the treble damage claim but that the claim for compensatory damages was not an action for a penalty or a forfeiture within the contemplation of the California statute in view of the holding of the California court that actions for damages beyond or without reference to actual loss were actions for penalties or forfeitures.

In *Siegel Oil Co. v. Gulf Oil Corp.,* 701 F.2d 149 (Em.App.1983), involving a statute of limitations problem, we commented: "The nature of Siegel's claim presents a question of federal law."

In *Rainey v. Union Oil Co. of California,* 732 F.2d 1563 (Em.App.1984), *supra,* we stated: "All of plaintiff's claims were related to, and dependent upon, application of the Emergency Petroleum Allocation Act (EPAA) and its regulations and hence we reject the contention of Union that this court lacks jurisdiction."

It was explained in footnote 1 at 1564:

... Suffice it to note here that plaintiffs' first claim alleging damages from Union's circumvention of EPAA regulations was deemed by the trial court to have failed because plaintiffs did not activate those regulations by proper designation of Union as their new supplier and, not having been so designated, Union had no obligation to either plaintiffs or plaintiffs' successors. Based on this theory the trial court also dismissed plaintiffs' claims for tortious interference with the sale of plaintiffs' business and breach of contract to supply gasoline because of assumed absence of any obligation on the part of Union beyond the faulted designation to support them. The drawing of fine lines, as Union would have us do, between the "arising under" and the "issue" formulation of our appellate jurisdiction is unnecessary in this case by reason of the interdependency of the respective claims.

In the present case, the paramount issue that had to be decided in the district court was not whether a claim for a "penalty" might be subordinated under the Bankruptcy Act. No one could, did, nor can question this. It was whether the claim of DOE as premised entirely upon provisions of the ESA and the EPAA and its regulations was in fact and law one for a penalty or one for restitution—and whether, indeed, again interpreting the prerogatives of the Agency and the practicalities of its procedures under the EPAA, there could be restitution beyond the "disgorgement" of profits illegally obtained by the oil company or whether in the situation before the Court this would suffice.

 The Temporary Emergency Court of Appeals has jurisdiction to consider cases necessarily involving, in whole or in part, ESA or EPAA issues, even though there may be other intertwined non-EPAA/ESA issues. On the other hand, Courts of Appeals do not have jurisdiction to decide EPAA/ESA issues because as to such issues the jurisdiction of this court is exclusive.

 The bankruptcy judge and the district court necessarily had to consider EPAA/ESA issues in arriving at a proper decision whether DOE's claim was for a penalty or for restitution. Even though they did not do so expressly, their interlocutory decisions were dispositive of those issues at least for the time being. As such, they necessarily decided them, subject to the exclusive appellate jurisdiction of this court from any final decision to that effect.

With the foregoing qualifications and supplementation, I concur in Judge Sear's opinion and with its dismissal of DOE's present appeal.

ESTES, Judge, specially concurring.

 I concur with the result of Judge Sear's opinion and with its reasoning as to the issue of finality under bankruptcy law. I also concur in Judge Christensen's opinion in its discussion of the competency and jurisdiction of the TECA to hear and determine this appeal.

### I.

I feel that the facts and circumstances of the present case deserve a more thorough recitation than has been afforded in Judge Sear's opinion.

West Texas Marketing (WTM) was incorporated May 23, 1978, and was engaged in crude oil reselling. It was wholly owned by two men, John Troland and David Ratliff. Both Troland and Ratliff had been previously employed by crude oil resellers. David Hooper, a Texas attorney, was employed by WTM as its legal counsel. Hooper also owned PetroTech, another crude oil reseller, of which Troland and Ratliff received a share of the profits.

The Department of Energy asserted that WTM, through 28 separate chain transactions, had sold, certified as exempt, oil which they had previously sold certified as lower tier and upper tier, and that this conduct was used as a means to obtain prices higher than allowed by the regulations, in violation of 10 C.F.R. §§ 205.202, 210.62(c). PetroTech participated in all of these transactions as a purchaser and seller. Record at Vol. 1, pp. 4–79; *see also United States v. John T. Troland and David N. Ratliff,* Crim. No. 81–CR–23–E (N.D.Okla. April 2, 1981).

The case came to this court from a district court order regarding the Chapter 7 proceedings in which WTM was the bankrupt.

### II.

Judge Christensen is quite correct in his determination that the competency of this court over the subject matter of this appeal should and must be determined. A court is always considered to have jurisdiction to determine its own jurisdiction.

" 'Jurisdiction to determine jurisdiction' refers to the power of a court to determine whether it has jurisdiction over the parties to and the subject matter of a suit. If the jurisdiction of a federal court is questioned, the court has the power and the duty, subject to review, to determine the jurisdictional issue." 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3536 (2d ed. 1984) (footnotes omitted). The Supreme Court, in *Stoll v. Gottlieb,* stated that "[e]very court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." 305 U.S. 165, 171–172, 59 S.Ct. 134, 137, 83 L.Ed. 104, 108 (1938).

This court is bound to respond to the jurisdictional attack which was briefed and argued before it, which dealt with the power of the Temporary Emergency Court of Appeals (TECA) under § 211(b)(2) of the

Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, as incorporated in the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 754 (a)(1), to decide this appeal.

Judge Christensen's concurrence deals with the issue of this court's competency, and I concur in his reasoning as well as his result. I do have some additional observations, however. That this court has exclusive jurisdiction over this appeal is now undeniable. Any future appeal of this case would lie exclusively with the TECA. The Supreme Court has stated that the TECA was designed to "provide speedy resolution of cases brought under the Act [ESA]." *Bray v. United States*, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215, 217 (1975). In order to effect this policy, the lower courts should act with dispatch to provide a "speedy resolution" of this case.

With respect to this court's competency to hear this appeal, I concur with Judge Christensen's opinion that this court has exclusive jurisdiction over the subject matter of this appeal. In all other respects, I concur in Judge Sear's opinion and with its dismissal of the Department of Energy's present appeal.

## ON PETITION FOR REHEARING

PER CURIAM.

This opinion arises from a petition for rehearing filed by Appellant Department of Energy (DOE) from an order of this court of March 27, 1985, dismissing the appeal for lack of finality. *United States Department of Energy v. West Texas Marketing Corp.*, 763 F.2d 1411 (Em.App.1985). The underlying facts of this appeal are outlined in those opinions.

■ In its petition for rehearing, DOE presented information which leads us to the conclusion that unless this court decides the issue of the subordination of DOE's claim, the amount of that claim will

never be finally determined and the DOE will have no real opportunity to pursue this matter on appeal. This allows us to decide the merits of this appeal under the collateral order doctrine developed in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *United States v. Texas Energy Petroleum Corp.*, 719 F.2d 394 (Em.App.1983); *In re Exennium*, 715 F.2d 1401 (9th Cir.1983); *Sun Oil Co. of Pa. v. Federal Energy Administration*, 572 F.2d 867 (Em.App.1978); *Hines v. D'Artois*, 531 F.2d 726 (5th Cir.1976).

Appellee West Texas Marketing (WTM) does not assert that the decision of the lower court does not come under the collateral order doctrine. Instead, in its Reply to Petition for Rehearing, WTM concedes that "in the absence of other mooting factors, the Orders of the Bankruptcy Court and the District Court appealed from were and are final as a matter of practical effect." WTM does, however, allege "specifically" one mooting factor for consideration by this court. A priority tax claim in the amount of $40,734,614.82 has been filed on behalf of the United States by the Internal Revenue Service.[1] If as little as 20 percent of this claim is allowed by the Bankruptcy Court, then the DOE will receive nothing regardless of whether its claim is classified as a penalty or as restitution. We disagree with WTM's assertion that in the interests of judicial economy we should consider the orders of the Bankruptcy Court and the District Court as non-final until the pending tax claims have been resolved. The existence of the tax claim does not moot the issue of whether the DOE's $22,612,-941.52 claim is a penalty; it merely raises the possibility of mootness at some unde-

---

**1.** In its Reply to Petition for Rehearing, WTM alleges a tax priority claim of $43,235,547.82. However, an examination of their Attachment A reveals the true amount of the tax *priority* claim to be $40,734,614.82. This amount excludes the $2,500,933.00 which is listed separately from the priority claims as an unsecured general claim.

fined future date.[2] Indeed, WTM has cited no authority to show that the mere possibility of future mootness vitiates the collateral order doctrine. We therefore feel compelled to decide the issue before us.

WTM asserts that the claim of DOE is for a penalty given fourth priority under 11 U.S.C. § 726(a)(4). DOE alleges that the claim is for restitution and thus is entitled to second priority as a general unsecured claim under 11 U.S.C. § 726(a)(2).

■■■ The DOE's claim is clearly for restitution and not for a penalty. The Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751 *et seq.*, has specific sections which deal with civil and criminal penalties. *See* 15 U.S.C. § 754(a)(3). The DOE did not seek these penalties. Instead, the DOE sought restitution under the authority of § 209 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, as incorporated in the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 754(a)(1). This statute states "the court may order *restitution* of moneys received in violation of any such order or reglation." (emphasis added) By virtue of the statutory scheme and the regulations issued pursuant thereto, DOE may collect such restitution on behalf of persons suffering loss from overcharges through remedial orders, consent decrees, or actions in the district court. 10 C.F.R. §§ 205.192–205.199J; *see also* Subpart V (Special Procedures for Distribution of Refunds). *New York Petroleum Corp. v. Ashland Oil, Inc.*, 757 F.2d 288 (Em.App. 1985); *Sauder v. Department of Energy*, 648 F.2d 1341, 1348–1349 (Em.App.1981).

■■■ To be allowed in bankruptcy a claim does not have to be first reduced to judgment, as already recognized by the Bankruptcy Court in allowing DOE's claim subject to the determination of amount. It is manifest that whatever its amount is, DOE's claim is not one for "any fine, penalty or forfeiture, or for multiple or exemplary, or punitive damages," and thus cannot

lawfully be relegated to the fourth priority. *Fourth priority* in bankruptcy is defined as:

> "[P]ayment of any allowed claim, whether secured or unsecured, for any fine, penalty or forfeiture, or for multiple or exemplary, or punitive damages, arising before the earlier of the order for relief or appointment of the trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim." 11 U.S.C. § 726(a)(4).

By the clear wording of the statute, the question of whether a claim is for "compensation for actual pecuniary loss suffered by the holder of such claim" only arises when a penalty is involved. As no penalty is involved here whether the DOE suffered actual pecuniary loss is immaterial. WTM's opinion as to the effectiveness of DOE in distributing funds collected to the actual parties who were overcharged cannot change the restitutionary character of DOE's claim.

DOE's motion for reconsideration is hereby GRANTED. Upon reconsideration, it is hereby ORDERED:

The portion of our ruling of March 27, 1985, upholding the Temporary Emergency Court of Appeals' jurisdiction to decide this appeal is hereby confirmed.

The portion of our ruling of March 27, 1985, dealing with the finality of the lower court's order is hereby vacated.

The rulings of the district court and the bankruptcy court that the DOE's claim was for a penalty rather than for restitution are hereby reversed.

This appeal is remanded to the district court and the bankruptcy court for further proceedings in harmony with this opinion, including expeditious determination of the amount of the priority tax claim of the United States and the amount of DOE's

---

**2.** The pretrial conference, set for April 26, 1985, referred to in WTM's Reply to Petition for Re-

hearing has been postponed indefinitely.

claim for restitution, subject only to the possible mooting of the latter issue should the priority claim of the United States be allowed in sufficient amount.

Jurisdiction of this appeal is hereby retained until further action by this court.

Judge SEAR dissents and files a dissenting opinion.

SEAR, Judge, dissenting.

Based on "information" presented by the DOE in its petition for rehearing, but not otherwise identified in its opinion, the majority has (1) reversed its earlier determination that the decision of the bankruptcy judge and district court from which the DOE appeals is non-final; (2) decided that this court has subject matter jurisdiction over the DOE's appeal; and (3) resolved the merits of the appeal. Because I disagree with the conclusions reached by the majority with respect to all three issues, I respectfully dissent.

## I. Finality

The information to which the majority refers in reversing its position regarding the finality of the bankruptcy judge's decision is two documents which the DOE attached to its petition for rehearing, neither of which were included by the parties in the stipulated record. The first document is a "Memorandum and Order" issued by the bankruptcy judge on May 11, 1983, in which he enjoined the DOE:

> from proceeding or continuing in any manner of the administrative proceedings against the debtor until a reasonable time has elapsed after the timeliness of filing of claim issue and the two subordination issues have been resolved by this court. If all those issues are resolved adversely to the trustee this

court, at time of resolution, will set a date by which the trustee shall have filed his objections to the PRO or, if this court so determines, shall have joined issue in this court to the factual issues contained in the proof of claim and the incorporated Proposed Remedial Order.

Attach. A to DOE Pet. for Reh. The second document is styled "First Supplement to Objection to DOE's Claim No. 38" in which the trustee objects to the amount of the DOE's claim on several grounds.[1] Based upon this information, the majority concludes "that unless this court decides the issue of the subordination of DOE's claim, the amount of that claim will never be finally determined and the DOE will have no opportunity to pursue this matter on appeal;" however, it provides neither explanation of how it reached that conclusion, nor discussion of how that conclusion creates jurisdiction under the collateral order doctrine.

The collateral order doctrine is an exception to the final judgment rule of 28 U.S.C. § 1291. It permits immediate appeal of orders which "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Even assuming that this exception applies to appeals under 28 U.S.C. § 158(d), an assumption which is implicit in the majority's decision, neither of the two documents to which it refers changes my opinion that the bankruptcy judge's order did not conclusively determine the dispute regarding the DOE's claim. There is nothing in the majority's opinion to indicate why the entry of an injunction barring further

---

1. The objections are:

A. The entire foundation for alleged liability under Claim No. 38 is denied by Debtor.

B. The amount alleged by Claim No. 38 is unliquidated an contingent and dependant upon findings by this or other Court of liability on a transaction by transaction basis.

C. Claim No. 38 includes interest which is impermissible under the Bankruptcy Code.

D. The books and records of Debtor indicate no such liability as is asserted under Claim No. 38.

E. Claim No. 38 contains duplicative damages or claims which would result in double recovery.

Attach. B to DOE Pet. for Reh.

administrative proceedings by the DOE[2] prevents the bankruptcy judge from determining the amount of the DOE claim to be allowed as he is required to do under the Bankruptcy Code. Section 502 of the Bankruptcy Code provides that where a party in interest has objected to a claim as the trustee has done in theis case,[3] the bankruptcy judge:

> after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount
>
> . . .

11 U.S.C. § 502(b) (emphasis added). Where the claim is unliquidated like that of the DOE in this case, section 502 provides that:

> (c) There shall be estimated for purpose of allowance under this section—
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c)(1). Thus, regardless of any pending administrative proceeding, the bankruptcy judge must determine the amount of the DOE's claim to be allowed and his order subordinating the DOE's claim is reviewable on appeal from that determination.[4] Consequently, the bank-

ruptcy judge's order is not "effectively unreviewable on an appeal" from final determination of the DOE's claim. *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at 468, 98 S.Ct. at 2458. Moreover, the majority itself has found that "[t]he question of priority [apparently referring to subordination] is not separable from and collateral to the question of allowance." In the majority's own view, the bankruptcy judge's order subordinating the DOE's claim did not "resolve an important issue completely separate from the merits of the action." *Coopers & Lybrand v. Livesay, supra,* 437 U.S. at 468, 98 S.Ct. at 2458. Because the bankruptcy judge's order fails two of the three tests for determining whether it is a collateral order, the collateral order exception is inapplicable and the order is not presently reviewable.

The bankruptcy judge is obligated to determine the amount of the DOE's claim regardless of whether it has been subordinated; reviewing at this time his order subordinating the DOE's claim accomplishes nothing other than creation of the potential for multiple appeals where formerly there could have been but one.[5] This waste of judicial resources is particularly objectionable where there may never be a need to resolve the DOE's appeal. As the majority recognizes, if the tax claim of the United States is allowed, it must be paid

---

**2.** Indeed, it is not clear why it was necessary to enjoin the DOE. The Bankruptcy Code provides for an automatic stay upon the filing of a petition for relief of:

> the commencement or continuation, including the issuance or employment of process, of a judicial, *administrative,* or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1) (1983) (emphasis added), amended by Pub.L. No. 98–353, § 441(a), 98 Stat. 371 (1984) which inserted the words "action or" after "other."

**3.** Although the stipulated record contains no indication whether the trustee has challenged the DOE's claim, both parties at oral argument agreed that the trustee had filed an objection to the DOE's claim. The substance of that objection is apparently contained in the trustee's

"First Supplement to Objection to DOE's Claim No. 38" which the DOE attached to its petition for rehearing.

**4.** Review of the bankruptcy judge's order could also be accomplished on appeal from an order for the distribution of the estate. *See* Bankruptcy Rule 3009.

**5.** We may now be faced with three spearate appeals. Before determining the amount of the DOE's claim, the bankruptcy judge may reconsider whether the DOE's claim should be equitably subordinated pursuant to 11 U.S.C. § 510(c), determination of which was pretermitted by his decision subordinating the DOE's claim under 11 U.S.C. § 726(a)(4). Considering the analysis and result reached by the bankruptcy judge in *In re Colin,* 44 B.R. 806 (Bkrtcy.S.D.N.Y.1984), it is possible that the DOE's claim will once again be subordinated by the bankruptcy judge and another appeal taken—all before determination of the amount of the claim.

before the DOE's claim, *see* 11 U.S.C. §§ 507(a)(7) and 726(a)(1), and the DOE's appeal will be moot.

## II. Subject Matter Jurisdiction

Although the majority finds it has subject matter jurisdiction to determine this appeal, I am unable to understand where that source of jurisdiction is found. The principal inquiry of the Temporary Emergency Court of Appeals ("the TECA") in determining whether it has jurisdiction over an appeal is whether an EPAA issue was adjudicated by the district court.[6] *Mobil Oil Corp. v. Department of Energy, supra,* 728 F.2d at 1497; *Francis Oil & Gas, Inc. v. Exxon Corp.,* 687 F.2d 484, 487 (Em.App.) *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Texaco, Inc. v. Department of Energy,* 616 F.2d 1193, 1198 (Em.App.1979). The order of the bankruptcy judge from which the DOE appeals contains not a single reference to the EPAA or its implementing regulations. His decision is based entirely on his interpretation of § 726(a)(4) of the Bankruptcy Code. Such a decision cannot be said to have adjudicated an EPAA issue, and this court therefore lacks subject matter jurisdiction over the DOE's appeal.

The majority contends that this court has jurisdiction "to consider cases necessarily involving, in whole or in part, ESA or EPAA issues, even though there may be other intertwined non-EPAA/ESA issues." Notwithstanding the bankruptcy judge's failure to so much as mention the EPAA, the majority theorizes that this case "involves" EPAA issues because the "legal consequences of the claim at issue depend mainly upon an interpretation of the EPAA, its implementation and enforcement." The majority's explanation of their conclusion is merely that:

[t]he bankruptcy judge and the district court necessarily had to consider EPAA/ESA issues in arriving at a proper decision whether DOE's claim was for a penalty or for restitution. Even though they did not do so expressly, their interlocutory decisions were dispositive of those issues at least for the time being. As such, they necessarily decided them, subject to the exclusive jurisdiction of this court from any final decision to that effect.

The majority makes no attempt to reconcile its decision finding subject matter jurisdiction with the cases previously decided by the TECA that hold that our subject matter jurisdiction is contingent on the adjudication by the district court of an EPAA issue. It has reached out beyound the "special and limited jurisdiction" of this court, *MPGC, Inc. v. Department of Energy,* 673 F.2d 1277, 1280 (Em.App.1982); *Texaco, Inc. v. Department of Energy, supra,* 616 F.2d at 1194, to decide a bankruptcy issue.

## III. The Merits of the DOE's Appeal

The majority having determined not only that this court has jurisdiction to consider an appeal from the non-final decision of the bankruptcy judge which adjudicated no EPAA issue, but having resolved the merits of that appeal as well, I find it necessary to point out what I believe to be the proper resolution of the merits of this appeal were it properly before us.

In his order of June 21, 1983, the bankruptcy judge subordinated the DOE's claim pursuant to 11 U.S.C. § 726, which provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

\* \* \* \* \* \*

6. Although the TECA has described as a second principal inquiry whether "resolution of the litigation in its entirety requires interpretation or application of the EPAA and regulations," *Mobil Oil Corp. v. Department of Energy,* 728 F.2d 1477, 1497 (Em.App.1983), *cert denied,* — U.S. —, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984), only one decision by this court purports to apply that test. *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.,* 591 F.2d 711 (Em.App.) *cert. denied,* 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979). The defendant's counterclaim in that case, however, presented an EPAA issue which had been adjudicated by the district court. *Id.* at 716. I have found no case in which this court exercised its jurisdiction where no EPAA issue had been adjudicated by the district court.

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

11 U.S.C. § 726(a)(4). The bankruptcy judge found that the DOE's claim did not represent actual pecuniary loss to the DOE. He therefore concluded its claim must be subordinated, pursuant to § 726(a)(4), to the claims of those creditors who did suffer pecuniary loss.

The majority, however, has determined that the bankruptcy judge improperly subordinated the DOE's claim because it interprets "the clear wording of the statute" to mean that the question of whether a claim is "compensation for actual pecuniary loss suffered by the holder of such claim" arises only where the claim can be characterized as a penalty. While I would not disagree with their interpretion of the plain language of the statute if we were writing upon a clean slate, I cannot ignore the case law which has interpreted the statute differently.

Although I have found no appellate case which has interpreted 11 U.S.C. § 726(a)(4), several cases have interpreted its predecessor, section 57j of the Bankruptcy Act of 1898.[7] Section 726(a)(4) of the Code and section 57j of the Act are substantially identical; the most salient difference is that section 57j provided that a claim for a penalty not representing pecuniary loss to the holder of the claim would be disallowed rather than merely subordinated as under § 726(a)(4) of the Code. There is no evidence in the legislative history of § 726(a)(4) to suggest that it should be interpreted differently than § 57j of the Act.

The interpretation given § 57j by the Supreme Court is different than that which the plain language of that provision would suggest. In *Simonson v. Granquist,* 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962), the Court broadly interpreted the scope of § 57j in holding that provision barred a claim for tax penalties by the United States against the bankrupt's estate. The Supreme Court did not limit § 57j to claims for a penalty or forfeiture. Instead, the Court found that § 57j "plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a 'pecuniary' loss." *Id.* at 538–39.

The Courts of Appeals have consistently interpreted § 57j in accordance with the Supreme Court's opinion in *Simonson.* For example, in a case involving the right of the United States to recover excise taxes from the estate of a bankrupt, *In re Unified Control Systems, Inc.,* 586 F.2d 1036 (5th Cir.1978), the district court had held that "[i]f Congress designates an exaction a tax, then that tax is not a § 57(j) [sic] penalty if it is a constitutional exercise of the taxing power under Article I, Section 8, Clause 1, of the United States Constitution." The Fifth Circuit, however, reversed:

We cannot agree with the suggestion that the label placed upon an imposition in a revenue measure is decisive in determining its character.... We disagree, too, with the conclusion that a tax under the Constitution cannot be a penalty. Section 57j places penalties in a category quite different from debts, and the character of a penalty cannot be changed by calling it a tax. The words of the statute precisely reveal the purpose of Congress not to exercise its sovereign right to a claim against a bankrupt except to the extent that there has been a pecuniary loss.

*Id.* at 1037–38 (footnote omitted). *Accord United States Department of Interior v.*

---

**7.** Section 57j of the Bankruptcy Act provided: Debts owing to the United States or to any States or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose ...

11 U.S.C. § 93j (repealed October 1, 1979).

*Elliott,* 761 F.2d 168, 170 (4th Cir.1985) ("language of section 57(j) [sic] appears to be broad enough to 'bar all claims except those based on a pecuniary loss' "); *United States v. RePass,* 688 F.2d 154, 158 (2d Cir.1982); ("Only that portion of the damages which represents the amount of pecuniary loss sustained by the transaction ... is within the purview of section 57(j) [sic] of the act"); *United States v. Moore,* 366 F.2d 243, 246 (5th Cir.1966) ("to the extent that this sum does not represent pecuniary loss it is a penalty"); *see also, In re Compton Corp.,* 40 B.R. 875, 877 (Bkrtcy.N.D. Tex.1984) ("Bankruptcy case law under the former Bankruptcy Act delimiting the concept of 'penalty' is still the law. Controlling precedent defines a Bankruptcy penalty as a claim without actual pecuniary loss to the claimant"). Thus, the crucial test for determining whether a claim not other-

wise labeled as a penalty is a penalty for the purpose of § 726(a)(4) is whether the holder of the claim suffered pecuniary loss. This is precisely the test applied by the bankruptcy judge.

Nevertheless, the majority by reference solely to the statute, determined that the "question of whether the DOE suffered actual pecuniary loss is immaterial," and that the bankruptcy judge therefore improperly subordinated the DOE's claim.[8] I disagree.

I respectfully dissent.

---

**8.** My failure to comment upon the majority's description of the DOE's claim as one for restitution under section 209 of the ESA should not be taken as acquiescence in the majority's opinion. *See United States Department of Energy v. West Texas Marketing Corp.,* 763 F.2d 1411, 1414–15 n. 4 (opinion of Sear, J.). Resolution of this appeal does not require determination of those issues.