**SECTOR REFINING, INC.,**
Defendant-Appellant,

v.

**ENTERPRISE REFINING COMPANY,**
Plaintiff-Appellee.

No. 5–112.

Temporary Emergency Court of Appeals.

July 22, 1985.

Marynell Maloney, Maloney & Maloney, San Antonio, Tex., was on brief for defendant-appellant.

Glenn W. Patterson, Jr., Green, Downey, Patterson & Schultz, Houston, Tex., was on brief for plaintiff-appellee.

Before HOFFMAN, THORNBERRY and SEAR, Judges.

## MEMORANDUM DECISION

SEAR, Judge:

Enterprise Refining Company ("Refining") brought this action in Texas state court against Sector Refining Company ("Sector") to recover damages for Sector's failure to process Refining's crude oil into refined petroleum products in accordance with their contract. Sector plead as an affirmative defense that the contract violated certain regulations of the Department of Energy ("the DOE"). Sector also asserted a third-party claim against Refining's corporate parent, Enterprise Products Company ("Products"), alleging that Products had violated the DOE's regulations. Products removed the action to the United States District Court for the Southern District of Texas, but was dismissed by Sector before trial. Following trial, the district court entered judgment on the jury verdict in favor of Refining. Thereafter, Sector moved for judgment notwithstanding the verdict, for a new trial and for remittitur. The district court denied Sector's motions. Sector appealed to the Fifth Circuit Court of Appeals, asserting that it was entitled to judgment as a matter of law because the contract violated the DOE's regulations. Alternatively, Sector contended that there was insufficient evidence to support either the jury's verdict that the contract did not violate the DOE's regulations or the amount of damages awarded. Sector also claimed that the damages awarded were excessive. Finding that "the controlling issues involve interpretation and application of the Emergency Petroleum Allocation Act," the Fifth Circuit transferred the

appeal to this court pursuant to 28 U.S.C. § 1631.[1]

Because we find that Sector failed to move for a directed verdict at the close of the evidence, we are unable to review Sector's claim that it is entitled to judgment as a matter of law on its affirmative defense. For the same reason, we are unable to consider Sector's contention that there is insufficient evidence to support the jury's verdict that the contract did not violate the DOE's regulations. We therefore affirm that portion of the district court's judgment. Sector also claims that there was insufficient evidence to support the jury's damage award and that the damage award is excessive. We find that these claims do not arise under the Emergency Petroleum Allocation Act. Consequently, we lack jurisdiction over them and transfer that portion of this appeal to the Fifth Circuit Court of Appeals.

## I. BACKGROUND

On July 28, 1979, Sector and Refining entered into a Crude Oil Processing Agreement ("the Agreement"). The Agreement provided that Sector was, during the month of August 1979, to process 31,000 barrels of crude oil owned by Refining into 30,690 barrels of refined petroleum products ("the Plant Products"). Under the Agreement, Sector was to receive two dollars ($2.00) for each barrel of crude oil processed.

Refining delivered the 31,000 barrels of crude oil to Sector, but Sector returned only 6,871 barrels of refined product. It failed to return either the remainder of the Plant Products or Refining's crude oil.

Refining thereafter filed this action in Texas state court, asserting several Texas state law causes of action against Sector, including breach of contract, violations of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Business and Commerce Code Ann. § 17.41 et seq. ("the Texas Consumer Protection Act"),[2] and fraud. In a pleading styled "Answer, Counterclaim and Third Party Claim," Sector pleaded as an affirmative defense that the Agreement was unenforceable because it constituted an attempt by Refining to sell crude oil at a price greater than that permitted by regulations which the DOE promulgated pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. § 751, et seq. ("the EPAA").[3] Sector also asserted a counterclaim against Refining and a

---

1. 28 U.S.C. § 1631 provides in pertinent part: [where a] court [as defined in 28 U.S.C. § 610] finds that there is want of jurisdiction the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred....

2. Refining alleged that Sector made false, misleading and deceptive representations in violation of §§ 17.46(b)(12) and 17.50 of the Texas Consumer Protection Act, which provide:
   § 17.50.
   (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:
   (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;
   *   *   *   *   *   *
   § 17.46.
   (b) Except as provided in Subsection (d) of this section, the term "false, misleading, or

deceptive acts or practices" includes, but is not limited to, the following acts:
   *   *   *   *   *   *
   (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
   *   *   *   *   *   *
   (d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.
   Tex.Business and Commerce Code Ann. §§ 17.-46, 17.50 (Vernon Supp.1985).

3. Sector alleged that the Agreement established a price for the sale of crude oil which exceeded the maximum selling price set forth in Subpart D of Part 212, the Mandatory Petroleum Price Regulations. Specifically, Sector contended that paragraph 7.2 of the Agreement, in which Sector agreed to purchase the Plant Products from Refining at Refining's request, violated 10 C.F.R. § 212.10(a) (1979), which provides:

third-party claim against Products, in which Sector alleged that both Refining and Products had violated the Texas Consumer Protection Act,[4] and that Products had "extracted illegal kickbacks" and violated the DOE's regulations.[5]

■ Alleging that Sector's third-party claim was a separate and independent claim

over which the district court had original jurisdiction, Products removed to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1441(c).[6] Before trial, however, Sector dismissed its third-party claim against Products and its counterclaim against Refining.[7] Consequently, the only claims

---

No firm (including an individual) may charge a price for any covered product which exceeds the maximum price at which that product is permitted to be sold to the class of purchaser concerned under this part.

Sector also claimed that paragraph 7.2 violated the following regulations in the General Allocation and Price Rules: (1) 10 C.F.R. § 210.62(a) (1979), which provides:

Suppliers will deal with purchasers of an allocated product according to normal business practices in effect during the base period specified in Part 211 for that allocated product, and no supplier may modify any normal business practice so as to result in the circumvention of any provision of this chapter....

and (2) 10 C.F.R. § 212.62(c), which provides:

Any practice which constitutes a means to obtain a price higher than is permitted by the regulations in this chapter or to impose terms or conditions not customarily imposed upon the sale of an allocated product is a violation of these regulations. Such practices include, but are not limited to devices making use of inducements, commissions, kickbacks, retroactive increases, transportation arrangements, premiums, discounts, special privileges, tie-in agreements, trade understandings, falsification of records, substitution of inferior commodities or failure to provide the same services and equipment previously sold.

Although Sector also quotes various provisions in Part 205, Sector gives no hint as to how these regulations, which govern administrative procedures and sanctions, are applicable in this case. *See* 10 C.F.R. § 205.1 (1979).

4. Sector claimed that Refining and Products had violated §§ 17.46(b)(1) and (2), and 17.-50(a)(1) and (3) of the Texas Consumer Protection Act, which provide:

17.50.

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) the use of employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter;

*    *    *    *    *    *

(3) any unconscionable action or course of action by any person;

*    *    *    *    *    *

17.46.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts of practices" includes, but is not limited to, the following acts:

(1) passing off goods or services as those of another;

(2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

*    *    *    *    *    *

(d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

Tex.Business and Commerce Code Ann. §§ 17.-46, 17.50 (Vernon Supp.1985).

5. Sector's claims against Products for violations of the DOE's regulations and for extracting illegal kickbacks from Sector were based on two contracts between Sector and Products. In the first, Products allegedly agreed to sell to Sector 30,000 barrels of crude oil per month at the maximum price permitted by the DOE. Sector contended that it was required by Products to agree to a parallel contract under which Sector was to sell gasoline to Products at a loss of $50,000 per month. Sector alleged that this parallel contract constituted a kickback through which Products realized a price greater than the maximum selling price for crude oil under the DOE's regulation.

6. 28 U.S.C. § 1441(c) provides, in relevant part:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of actions, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

7. Although the docket clerk's courtroom minutes indicate that on the first day of trial, before selection of the jury "[t]he parties entered into a stipulation that Sector Refining, Inc. is withdrawing their third-party complaint," Record,

tried to the jury were Refining's Texas state law claims against Sector.[8]

■ In response to interrogatories, the jury found that: (1) Refining did not use "the Crude Oil Processing Agreement as a subterfuge to violate, either directly or indirectly, the rules and regulations of the Department of Energy"; (2) Sector's "nonperformance or breach of the Crude Oil Processing Agreement was the proximate cause of damages" to Refining; (3) Sector did not commit fraud upon Refining; and (4) the amount of damages sustained by Refining were $731,600.[9]

## II. JURISDICTION

■ Although the parties have not questioned our jurisdiction to determine this appeal—indeed, Refining sought and obtained transfer of the appeal from the Fifth Circuit Court of Appeals to this court—appellate courts nevertheless have the responsibility to consider their jurisdiction *sua sponte. Koke v. Phillips Petroleum Co.,* 730 F.2d 211, 214 (5th Cir.1984); *Ross v. Inter-Ocean Ins. Co.,* 693 F.2d 659,

660 (7th Cir.1982); *Atlantic Richfield Co. v. Federal Energy Administration,* 556 F.2d 542, 552 n. 24 (Em.App.1977). The Temporary Emergency Court of Appeals ("the TECA") is a court of special and limited jurisdiction. *MPGC, Inc. v. Department of Energy,* 673 F.2d 1277, 1280 (Em.App.1982); *Texaco, Inc. v. Department of Energy,* 616 F.2d 1193, 1194 (Em. App.1979). Its jurisdiction is governed by section 211(b)(2) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, incorporated by reference into the EPAA. *See* 15 U.S.C. § 754(a)(1). Section 211(b)(2) provides that the TECA "shall have jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." The TECA's principal inquiry in determining whether it has jurisdiction over an appeal is whether an EPAA issue was adjudicated by the district court.[10] *Mobil Oil Corp. v. Department of Energy, supra,* 728 F.2d at 1497; *Francis Oil & Gas,*

Docket No. 70, the stipulation is not in the record. The trial transcript, however, confirms that Sector dismissed both its counterclaim and third-party complaint before trial:

[Refining's counsel]: Your honor, there seems to be some confusion, at least by some persons, exactly what Sector has done as far as dropping its counterclaim and dismissing the third-party claim and we would like to get it formally on the record.

The Court: Surely.

[Sector's counsel]: It is on the record. I thought previously I had put it on the record with you, but now it is on the record and we have it. Hence, no—

The Court: I want both counsel to be satisfied and it is better to do it twice if there is any reservation.

[Sector's counsel]: Not [sic] reservation. That is an undiluted assumption.

The Court: All right.

T.R., Vol. II, at 112.

**8.** Where the federal claims which provided the basis for the district court to exercise pendent jurisdiction over state claims are resolved before trial, the district court retains power to decide the state claims. *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768 (D.C. Cir.1982); *see Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

**9.** Although Refining's First Amended Original Petition stated a cause of action against Sector

under the Texas Consumer Protection Act, and this cause of action was included in the Joint Pre-Trial Order, there is no reference to it in the interrogatories submitted to the jury. Similarly, the judgment entered by the district court makes no reference to this claim. It does not appear that Refining dismissed this claim because at the close of the evidence, Refining moved for a directed verdict on this claim. *See* T.R., Vol. III at 139–40. Refining, however, has not appealed the judgment of the district court, and any error has therefore been waived.

**10.** Although the TECA has described as a second principal inquiry whether "resolution of the litigation in its entirety requires interpretation or application of the EPAA and regulations," *Mobil Oil Corp. v. Department of Energy,* 728 F.2d 1477, 1497 (Em.App.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984), only one decision of the TECA purports to apply that test. *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.,* 591 F.2d 711 (Em.App.), *cert. denied,* 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979). In that case, however, defendant's counterclaim presented an EPAA issue which had been adjudicated by the district court. *Id.* at 716. We have found no case in which the TECA has exercised its jurisdiction where an EPAA issue had not been adjudicated by the district court.

*Inc. v. Exxon Corp.,* 687 F.2d 484, 487, (Em.App.), *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Texaco, Inc. v. Department of Energy, supra,* 616 F.2d at 1198. Thus, this court has found that it has jurisdiction where the EPAA issue adjudicated was presented in the answer or counterclaim. *See Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp., supra,* 591 F.2d at 716; *Sohio Petroleum Co. v. Caribou Four Corners, Inc.,* 573 F.2d 1259, 1262 (Em.App.1978); *see also Coastal States Marketing, Inc. v. New England Petroleum Corp.,* 604 F.2d 179 (2d Cir.1979) (declining jurisdiction where only issue on appeal was district court's rejection of defense that contract was illegal under the DOE's regulations). Adjudication by the district court of an EPAA issue, however, does not create jurisdiction of the TECA over non-EPAA claims or issues joined in the same action. The TECA has consistently refused to exercise jurisdiction over issues not arising under the EPAA even though those issues may be joined in the same action with other issues or claims that do arise under the EPAA. *Texaco, Inc. v. Department of Energy, supra,* 616 F.2d at 1196; *see Atlantic Richfield Co. v. Department of Energy,* 655 F.2d 227 (Em.App.1981); *Longview Refining Co. v. Shore,* 554 F.2d 1006 (Em. App.), *cert. denied sub nom, Shore v. Longview Refining Co.,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *Spinetti v. Atlantic Richfield Co.,* 522 F.2d 1401, 1403 (Em.App.1975); *Associated General Contractors v. Laborers International Union, Local 612,* 489 F.2d 749 (Em.App.1973); *City of Groton v. Federal Power Commission,* 487 F.2d 927 (Em.App.1973). We fear this construction of TECA's jurisdiction, however, is overly narrow and results in the wasteful volleying of cases between the TECA and the courts of appeal:

We must wonder as to the wisdom and necessity of creating a special court such as TECA. Approximately thirty percent of TECA's cases are decided upon jurisdictional grounds.

*Texaco, Inc. v. Department of Energy, supra,* 616 F.2d at 1199 (Hoffman, J., dissenting).

■ In this case, Sector appeals from the final order of the district court denying its alternative motions for judgment notwithstanding the verdict, for a new trial and for remittitur. Sector asserts that it was entitled to judgment as a matter of law or a new trial because the Agreement, which the jury found Sector to have breached, was illegal. Sector contends that the Agreement constituted an attempt by Refining to sell crude oil at a price greater than that permitted by regulations which the DOE promulgated pursuant to the EPAA. The district court's order rejecting this argument clearly adjudicated an EPAA issue. *See Coastal States Marketing, Inc. v. New England Petroleum Corp., supra,* 604 F.2d at 187. Accordingly, we have jurisdiction over this portion of Sector's appeal. Similarly, we have jurisdiction to consider Sector's claim that there is not sufficient evidence to support the jury's verdict that the Agreement did not violate the DOE's regulations.

■ Sector also contends that it is entitled to a new trial because there is insufficient evidence to support the amount of damages awarded by the jury to Refining on Refining's Texas state law breach of contract claim. Alternatively, Sector seeks a new trial or remittitur on the ground that the damages awarded are excessive. Although Sector now makes several arguments in support of these claims which implicate the DOE's regulations, none were presented to the district court and therefore could not have been adjudicated by that court.[11] Consequently, in denying Sec-

---

11. For example, Sector for the first time asserts on appeal that the jury's damage award: (1) was based on the jury's improper characterization of Refining's crude oil as stripper oil, Sector's Br. at 16; and (2) failed to reflect the effect of the Oil Entitlements Regulation, 10 C.F.R. § 211.67

(1979), Sector's Br. at 16–17. Whether the jury in fact arrived at its award in the manner suggested by Sector, however, is purely conjectural. *See Platis v. Stockwell,* 630 F.2d 1202, 1204 (7th Cir.1980). We would therefore have been un-

tor's motion for a new trial or for remittitur, the district court's determination that there was sufficient evidence to support the jury's verdict did not adjudicate an EPAA issue. Our jurisdiction depends not on whether an EPAA issue exists, but on whether an EPAA issue was adjudicated. *Texaco, Inc. v. Department of Energy, supra*, 616 F.2d at 1198; *Coastal States Marketing, Inc. v. New England Petroleum Corp., supra*, 604 F.2d at 187. We therefore lack jurisdiction to consider these claims.[12]

### III. THE LEGALITY OF THE AGREEMENT

#### A.

■ Sector's claim that the district court improperly refused to grant its motions for judgment notwithstanding the verdict turns on its affirmative defense that the Agreement is illegal as a matter of law. We discern two grounds for Sector's assertion that the Agreement is illegal. Both relate to paragraph 7.2 of the Agreement, which provided that Sector would, at Refining's request, purchase the Plant Products from Sector.[13] First, Sector contends that

this provision alters the relationship between a supplier, Refining, and a purchaser, Sector, in violation of 10 C.F.R. § 211.-63.[14] Sector fails, however, to explain how the alleged supplier/purchaser relationship was established and how paragraph 7.2 wrongfully alters that relationship. In any case, this is another contention raised by Sector for the first time in this appeal. It was not asserted in Sector's answer to Refining's complaint, the Joint Pre-Trial Order, or at trial. Consequently, it was not adjudicated by the district court and we lack jurisdiction to consider it.

■ Second, Sector asserts that paragraph 7.2 renders the Agreement illegal because it requires Sector to pay more than the ceiling price for crude oil established by regulations of the DOE, and that it is therefore entitled to judgment as a matter of law. The Courts of Appeals, however, may review a district court's denial of a motion for judgment notwithstanding the verdict only where the party who made the motion moved for a directed verdict at the close of the presentation of the evidence. Fed.R.Civ.P. 50(b);[15] *Trotter v. Todd*, 719

---

able to consider them even if they had been presented to the district court.

**12.** *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp., supra*, and *Mountain Fuel Supply Co. v. R. Johnson and Johnson Oil Co.*, 586 F.2d 1375 (10th Cir.1978), *cert. denied sub nom Johnson Oil Co., Inc. v. Mountain Fuel Supply Co.*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979) are not to the contrary. *See Texaco, Inc. v. Department of Energy, supra*, 616 F.2d at 1197 n. 2. In those cases, the plaintiffs sued for breach of contract. And in both cases, the defendants counterclaimed, alleging the contractual price violated the EPAA. Because resolution of the issue arising under the EPAA controlled the outcome of the entire litigation in those cases, those courts did not consider the plaintiffs' common law claims for breach of contract. In this case, resolution of the one issue arising under the EPAA will control the outcome of the entire litigation only if the issue is resolved in Sector's favor. Otherwise, non-EPAA issues will remain over which this court has no jurisdiction.

**13.** Paragraph 7.2 of the Agreement provided that:

Processor [Sector] agrees to purchase the Owner's [Refining] Plant Products from Own-

er if requested by Owner at the following values:

| | |
|---|---|
| Straight-run Naptha | 73½¢ per gallon |
| No. 2 Fuel Oil | 77¢ per gallon |
| No. 5 Fuel Oil | 59½¢ per gallon |

**14.** 10 C.F.R. § 211.63 provides, in part:

(b) *General Rule.* (1) All supplier/purchaser relationships in effect under contracts for sales, purchases and exchanges of domestic crude oil on January 1, 1976 shall remain in effect for the duration of this program; *Provided, however*, that any such supplier/purchaser relationship to which this section is applicable may be terminated as provided in paragraph (d) of this section.

10 C.F.R. § 211.63(b)(1) (1979) (emphasis in text).

**15.** Fed.R.Civ.P. 50(b) provides in pertinent part:

(b) Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of

F.2d 346 (10th Cir.1983); *Exxon Corp. v. Exxene Corp.*, 696 F.2d 544 (7th Cir.1982); *Rawls v. Daughters of Charity of St. Vincent DePaul, Inc.*, 491 F.2d 141, 147 (5th Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974). Moreover, the motion for directed verdict must be sufficiently specific to afford the party against whom the motion is directed the opportunity to cure possibly technical defects which might otherwise make his case legally insufficient. *Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 831–32 (3d Cir.1983); *see* Fed.R.Civ.P. 50(a).

■■■ In response to Refining's motion for a directed verdict at the close of the evidence in this case, Sector stated:

> For the record, we feel it obvious and apparent in the documents we have already given to the court that we are entitled to a directed verdict.
>
> Insofar as there being deceptive trade practices, or insofar as there being any predicate under the consumer trade act [apparently referring to the Texas Consumer Protection Act], to that end we incorporate the same thing that we heretofore furnished in our briefs as to why there can be no deceptive trade practice, no proof of fraud, no proper predicate, no ancillary action which is improper within the act.
>
> And insofar as the—in response to the directed verdict, of course, we say it is perfectly obvious and apparent that there is a fact issue insofar as to whether or not there was a circumvention of the D.O.E. regulations as they relate to controlled prices on crude oil. That is a fact question only that can be answered by the jury in this case because of the contested fact issues made by the respective efforts as is present before the court.

T.R., Vol. III at 140–41. Even assuming that this response to Refining's motion for

a directed verdict constitutes a motion by Sector for a directed verdict,[16] the only grounds asserted for the motion are those under the Texas Consumer Protection Act. A motion for judgment notwithstanding the verdict is, in effect, a renewal of the motion for directed verdict made at the conclusion of the evidence. *Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1035 (1st Cir.1984); *see* Fed.R.Civ.P. 50(b). Consequently, Sector's failure to seek a directed verdict on the ground that the Agreement was illegal as a matter of law precludes this court from reviewing the district court's alleged error in denying Sector's motion for judgment notwithstanding the verdict. *U.S. Industries, Inc. v. Blake Const. Co., Inc.*, 671 F.2d 539, 548 (D.C.Cir.1982); *Johnson v. Rogers*, 621 F.2d 300, 305 (8th Cir.1980); *see Martinez Moll v. Levitt & Sons of Puerto Rico, Inc.*, 583 F.2d 565, 568 (1st Cir.1978).

Moreover, in its response to Refining's motion, Sector specifically characterized the issue for which it sought judgment notwithstanding the verdict—whether the Agreement violated the DOE's regulations—as involving issues of fact that should be submitted to the jury. A motion for directed verdict may be granted only where the evidence is such that "the Court believes that reasonable men could not arrive at a contrary verdict." *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir.1982) quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (*en banc*); *see Croce v. Kurnit*, 737 F.2d 229, 236–37 (2d Cir.1984); *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 579 (6th Cir. 1979). Consequently, where a party has asserted that an issue is a contested issue of fact, that assertion can hardly be understood as a motion for a directed verdict. If it were otherwise, a party could gamble on the jury's verdict and then question the

---

judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside.

**16.** The district court apparently did not consider Sector to have moved for a directed verdict

because, immediately after this response by Sector's counsel, it ruled only on refining's motion:

All right. The plaintiff's motion will be denied …

T.R., Vol. III at 141.

sufficiency of the evidence on appeal. *See Freimanis v. Sea-Land Service, Inc.*, 654 F.2d 1155 (5th Cir.1981). Sector is therefore estopped from claiming that it moved for a directed verdict on the issue of the legality of the Agreement. Thus, Sector was not entitled to move for judgment notwithstanding the verdict, the district court therefore lacked authority to entertain Sector's motion, and we cannot consider Sector's contention that the district court erred in denying its motion for judgment notwithstanding the verdict. *See United States, for the Use and Benefit of Roper, IBG v. Reisz*, 718 F.2d 1004, 1007 (11th Cir.1983).

### B.

■■■■■ Sector's failure to move for a directed verdict, however, does not preclude review of the district court's denial of Sector's motion for a new trial. *Jones v. Miles*, 656 F.2d 103, 106 n. 1 (5th Cir.1981). Sector asserts two bases for its claim that it is entitled to a new trial. The first is identical to that which it asserted in its motion for judgment notwithstanding the verdict: the Agreement is illegal as a matter of law. Although Fed.R.Civ.P. 59 does not limit the permissible grounds for a new trial, it is unclear how illegality of the Agreement, standing alone, would entitle Sector to a new trial. If the Agreement were illegal as a matter of law, then Sector would have prevailed on its affirmative defense, and would be entitled to judgment rather than a new trial. Because Sector did not move for a directed verdict on this ground, it was not entitled to move for judgment notwithstanding the verdict and may not obtain that relief by characterizing its motion as one for a new trial.

Nevertheless, Sector could, if it made proper and timely objection at trial, be entitled to a new trial if the district court improperly submitted the issue of the legality of the Agreement to the jury. *See United N.Y. & N.J. Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 619, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959). Because Sector made no objection at trial—indeed, Sector argued that the issue should be submitted to the jury [17]—we may not consider whether a new trial is warranted on this ground. *See United States for Use and Benefit of Roper, IBG v. Reisz, supra*, 718 F.2d at 1007.

■■■■■ The second basis for Sector's claim that it is entitled to a new trial is that the jury's verdict that the Agreement was not illegal is against the great weight of the evidence. Motions for a new trial are committed to the discretion of the district court, *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984), and the district court's ruling is not to be disturbed unless there has been an abuse of discretion. *Goldstein v. Kelleher*, 728 F.2d 32, 38 (1st Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Washington Mobilization Committee v. Jefferson*, 617 F.2d 848, 850 (D.C.Cir.1980); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512 (Fed.Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). If the jury's verdict has a reasonable basis in the proof, we may not reverse. *Lavender v. Kurn*, 327 U.S. 645, 652, 66 S.Ct. 740, 743, 90 L.Ed. 916 (1946). Refining presented detailed expert testimony that the Agreement was not illegal. Sector's expert agreed, T.R., Vol. III at 131, but testified that the Agreement was part of a

---

17. Sector requested the court to submit to the jury the issue of the legality of the Agreement because it believed it "perfectly obvious and apparent that there is a fact issue insofar as to whether or not there was a circumvention of the D.O.E. regulations as they relate to controlled prices on crude oil." T.R., Vol. III at 141. Although Refining's experts testified that the Agreement did not violate the DOE's regulations, Sector's expert testified that the Agreement was part of a "scheme" or "subterfuge" to sell crude oil at a price greater than that permitted by the DOE's regulations. T.R., Vol. III at 126. In light of such conflicting testimony, we could not in any case conclude that the district court erred in submitting to the jury the question of whether the DOE's regulations were violated. *Bauman v. Centex Corp.*, 611 F.2d 1115, 1119 (5th Cir.1980).

subterfuge or scheme to charge a price for crude oil in excess of that permitted by the DOE's regulations. A "critical" element of the scheme hypothesized by Sector's expert involved certain purchases of gasoline. T.R., Vol. III at 91; *see* T.R., Vol. III at 98–102, 133. The opinion of Sector's expert, however, was based in part on documentation of gasoline purchases that were never admitted into evidence. T.R., Vol. III at 94, 97. Consequently, the jury had a reasonable basis to conclude that the Agreement was not used as a subterfuge to violate the DOE's regulations. Accordingly, with respect to those of Sector's claims over which this Court has jurisdiction, the judgment of the district court is affirmed.

Because this Court lacks jurisdiction over Sector's remaining claims that it is entitled to a new trial or remittitur because the jury's award of damages is unsupported by the evidence and is excessive, in the interest of justice, it is ordered that they be transferred to the Fifth Circuit Court of Appeals pursuant to 28 U.S.C. § 1631.