PENNZOIL EXPLORATION AND
PRODUCTION COMPANY,
Plaintiff–Appellant,

v.

Manuel LUJAN, Jr., Secretary, Department of the Interior, Barry A. Williamson, Director, Minerals Management Service, and Department of the Interior, Defendants–Appellees.

No. 5–128.

Temporary Emergency Court of Appeals.

Argued Nov. 14, 1990.

Decided Feb. 11, 1991.

George J. Domas (Cheryl M. Kornick with him on the brief) of Liskow & Lewis, New Orleans, La., for plaintiff-appellant.

Albert M. Ferlo, Jr., Atty., Dept. of Justice (Richard B. Stewart, Asst. Atty. Gen., Lisa Hemmer, and Martin W. Matzen, Attys., Dept. of Justice, and Peter Schaumberg, Office of the Sol., Dept. of the Interior, with him on the brief), for defendants-appellees.

Before CHRISTENSEN, HOFFMAN and THORNBERRY,* JJ.

CHRISTENSEN, Judge.

This is an appeal by plaintiff-appellant Pennzoil Exploration and Production Company ("Pennzoil") from summary judgment of the United States District Court for the Eastern District of Louisiana upholding an assessment of royalty by the Department of Interior ("DOI") on an offshore mining lease as against Pennzoil's contention that a Department of Energy (DOE) incentive program under the Emergency Petroleum Allocation Act operated to reduce the amount of that royalty.

Agreeing with the district court's ruling "that the DOE incentive program [did not] implicitly overrule the DOI regulation [and that] general policy considerations ... are not sufficiently compelling to overrule the Secretary of the Interior's explicit statutory authority to determine the value of production for royalty purposes," *Pennzoil Exploration & Prod. Co. v. Lujan,* 751 F.Supp. 602, 606 (E.D.La.1990), and being of the view that the sole contested issue decided below was one over which this Court has exclusive appellate jurisdiction, we affirm.

The DOI through its Minerals Management Service leases mineral rights on the outer continental shelf pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* Lessees are to be assessed royalty based on the "value of the production saved, removed, or sold" from the lease. 43 U.S.C. § 1337(a)(1)(A). The minimum value for royalty purposes is interpreted by the DOI as not less than the "gross proceeds accruing to the lessee from the disposition of the produced substances." 30 C.F.R. § 250.64 (1979), later redesignated as 30 C.F.R. § 206.150, with modifications thereafter not affecting this minimum royalty value based on gross proceeds.

By its complaint in the district court, Pennzoil challenged the DOI's interpretation of these provisions because the royalty administratively determined to be due on its lease on the basis of gross proceeds had been enhanced by production sales at unregulated prices authorized in lieu of regulated prices by the Tertiary Incentive Program ("TIP") administered by the Department of Energy ("DOE") pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.* (1973), as amended by the Energy Conservation and Production Act, 42 U.S.C. § 6801 *et seq.* (1976) (hereinafter collectively referred to as "EPAA" unless otherwise indicated) and by 10 C.F.R. § 212.78. Calculating "gross pro-

* Judge Thornberry filed a dissenting opinion attached hereto.

ceeds" of production sales on the basis of the unregulated prices actually received by Pennzoil during the period in question, as was done by the DOI, increased the royalty assessed against Pennzoil by the $159,-602.94 in dispute here.

The appellees insist that this Court has no jurisdiction because allegedly the district court neither had before it nor decided any issue arising under the EPAA. Our jurisdiction, of course, is limited to appeals in cases and controversies arising under the EPAA or regulations or orders issued thereunder. Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, as incorporated in section 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1).

The only issue the district court adjudicated, appellees argue, was the scope of the statutory authority of the Secretary of the Interior to calculate royalty payments due on federal oil leases on the basis of its "gross proceeds" rule, and the DOI's decision to include revenue based on the full price actually received under the TIP was no more than an application of that DOI rule. They dismiss as mere "dicta" the district court's denial of weight to Pennzoil's claim that the TIP regulations promulgated by the DOE implicitly overruled the Secretary of the Interior's implementation of his regulations governing the determination of the value of oil for royalty purposes, stating:

Clearly, then, to the extent that the district court addressed the applicability of the tertiary incentive program, it was not adjudicating an issue under the EPAA, but was considering whether the ability of the Secretary of the Interior to administer the federal oil and gas leasing program could be affected by regulations issued by the Secretary of Energy.

Appellees' brief at 14.

Appellant Pennzoil responds that its claim plainly arises under a regulation promulgated pursuant to the EPAA, viz. the TIP; that its right to relief stems from the mandate implicit in that program that only qualified producers are entitled to tertiary incentive revenue, and that the TIP takes precedence over attempts by the DOI to interpret its regulations to permit the sharing of the TIP proceeds under the guise of "royalty."

The Temporary Emergency Court of Appeals of course is a court of special and limited jurisdiction, *MGPC, Inc. v. Department of Energy*, 673 F.2d 1277, 1280 (Em.App.1982). In determining whether it has jurisdiction we have articulated two principal inquiries: whether resolution of the litigation requires the application or interpretation of the EPAA or its regulations and whether any EPAA issue presented to this Court has been adjudicated in the court below. *Francis Oil and Gas, Inc. v. Exxon*, 687 F.2d 484, 487 (Em.App.) *cert. denied*, 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982); *Texaco, Inc. v. Department of Energy*, 616 F.2d 1193, 1198 (Em. App.1979). *See also Coastal States Marketing, Inc. v. New England Petroleum Corp.*, 604 F.2d 179, 184–87 (2nd Cir.1979). When an appeal involves issues only part of which arise under the EPAA, this Court will decide only those arising under the EPAA, *Sector Refining, Inc. v. Enterprise Refining Co.*, 771 F.2d 496, 502 (Em.App. 1985); *Texaco*, 616 F.2d at 1198; *see also Atlantic Richfield Co. v. U.S. Dept. of Energy*, 769 F.2d 771, 778 (D.C.Cir.1984), unless a meaningful ruling requires consideration of the issues as a whole, *Citronelle–Mobile, Etc. v. Gulf Oil Corp.*, 591 F.2d 711, 716 (Em.App.), *cert. denied*, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979), the construction of the EPAA will control the litigation, *M. Spiegel & Sons Oil Corp. v. B.P. Oil Corp.*, 531 F.2d 669, 670–71 (2d Cir.1976); *see also Francis Oil*, 687 F.2d at 487, the issues are so commingled as to render separate treatment impractical, *Rainey v. Union Oil Co. of California*, 732 F.2d 1563, 1564 n. 1 (Em.App. 1984), or the non-EPAA issues are subsidiary, preliminary or threshold to an EPAA issue, *MGPC*, 673 F.2d at 1281; *Quincy Oil, Inc. v. Federal Energy Administration*, 620 F.2d 890, 893 (Em.App.1980); *see also Atlantic Richfield*, 769 F.2d at 779. When discrete EPAA and non-EPAA issues otherwise are involved on appeal, review must be bifurcated between the TECA and

the United States Court of Appeals, *Sector Refining,* 771 F.2d at 502; *Associated General Contractors v. Laborers International Union,* 476 F.2d 1388 (Em.App. 1973); *see also* 489 F.2d 749; *Atlantic Richfield,* 769 F.2d at 778.

■ From the beginning an EPAA issue has been central in this case; indeed there has been no other issue at all in dispute. Pennzoil has never questioned the DOI's interpretation of its gross proceeds rule or the royalty which Pennzoil was assessed except for its assertion of the controlling effect of the TIP regulations and the policy implicit therein.

It seems unnecessary to further explore the spectrum of our decisions on jurisdiction over the years beyond noticing that this case falls at its most fundamental beginning. Unless their generally utilitarian view of our limited jurisdiction is to be frittered away at this late date and the basis of numerous prior decisions recanted, it must of necessity extend to an EPAA claim constituting the sole contested issue presented to the district court and decided by it.[1] This will be made clear by a review of the administrative proceedings and the complaint and proceedings before the district court, as well as by the arguments before this court during which counsel for Pennzoil reiterated that except for the claimed impact of the DOE's TIP it questioned neither the amount nor validity of the DOI's royalty assessment. Paraphrasing a statement of Justice O'Connor in a recent decision of different context,[2] it fairly may be said that the appellees' argument that the EPAA claim is irrelevant to the district court's decision because all that is at issue is the DOI royalty regulation misses the point, which is that without Pennzoil's EPAA claim as adjudicated by the district court there simply is no cause of action (and likely not even a case or controversy).

In the administrative proceedings, Pennzoil premised its contention upon the elimination from the "value" on which its royalty payment was to be computed its "bonus" or "recoupment of allowed expenses" to which it was entitled from being permitted to charge the higher market price rather than the regulated price for oil covered by the TIP. The acting director of Minerals Management Service squarely addressed that contention and rejected it.[3] In

---

1. The narrowness of some of our jurisdictional rulings already has been the subject of criticism. In *Sector Refining, Inc. v. Enterprise Refining Co.,* 771 F.2d 496, 502 (Em.App.1985), with reference to our refusal to exercise jurisdiction over issues not arising under the EPAA even though these issues may be joined in the same action with other issues or claims that do arise under the EPAA, we stated:

   We fear this construction of TECA's jurisdiction, however, is overly narrow and results in the wasteful volleying of cases between the TECA and the courts of appeal:

   We must wonder as to the wisdom and necessity of creating a special court such as TECA. Approximately thirty percent of TECA's cases are decided upon jurisdictional grounds. [*Texaco v. Department of Energy, supra,* 616 F.2d at 1199 (Hoffman, J., dissenting).]

   Judge Hoffman was addressing the majority decision in *Texaco* which he deemed unduly restrictive.

2. McClendon argues that the pension plan is irrelevant to the Texas cause of action because all that is at issue is the employer's improper motive to avoid its pension obligations. The argument misses the point, which is that under the Texas court's analysis there simply is *no* cause of action if there is no plan.
   *Ingersoll–Rand Co. v. McClendon,* — U.S. —, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

3. Pennzoil has taken the position that the royalty due the Minerals Management Service (MMS) should be based on the regulated ceiling price established by DOE pursuant to section 8(a) of the Emergency Petroleum Allocation Act (EPAA) (15 U.S.C. 757). Pennzoil argues that, under the Energy Conservation and Production Act (ECPA) (42 U.S.C. 6801 *et seq.* (1976)), royalty interest owners must be paid with reference to the otherwise applicable EPAA ceiling price in order to prevent the diversion of limited tertiary incentive revenue to royalty owners who did not incur the expense of investing in enhanced oil recovery projects. Pennzoil also contends that the amount of the tertiary incentive revenue allowed by DOE to be recovered from the sale of the oil simply has no relation to the value of that oil. Instead, the amount of tertiary incentive revenue is related only to the amount of "allowed expenses" incurred by the producer elsewhere in connection with its tertiary enhanced recovery projects.

   ....

   In conclusion ... royalty value could properly be based on the proceeds received by the

the final decision of the administrative law judge, this rejection of Pennzoil's position was affirmed:

> Gross proceeds looks to the actual consideration received from the oil produced from the lease.... In this case that included Pennzoil's tertiary incentive revenue.... DOE's interpretation of 10 CFR 212.78 cannot negate the basis established by the Department of the Interior in 30 CFR 250.64 for determining the value of production any more than a lessee can by declaring what the price of the resource is [citation omitted].

IBLA 84–816, Pennzoil Oil and Gas, Inc., June 8, 1989, I Administrative Record, Tab 13, at 147–159.

Pennzoil's complaint in the district court appropriately claimed jurisdiction under the EPAA[4] and stated:

> Pennzoil, during the months of August 1980 through January 1981, [the only period for which the amount of royalty is in question in this case] obtained tertiary incentive revenue equal to the difference between the regulated price and the deregulated price for oil produced from lease OCS–G 2115 attributable to its working interest. Pennzoil used this tertiary incentive revenue to recoup the "allowed expenses" of its tertiary enhanced recovery project on another oil producing property [and] ... sold the oil attributable to the lessor's royalty interest produced from lease OCS–G 2115 at the then current regulated prices and paid its royalty based upon the regulated price.

Plaintiff's complaint 20–21, supplemental appendix 7.

Pennzoil expressly rested its claim in the district court upon the contention that:

> [T]he DOI does not have authority to impose royalties based on gross proceeds to the extent that those gross proceeds include tertiary incentive revenue; ...

> [t]he decision is contrary to the regulations and interpretations issued by the DOE regarding the tertiary incentive crude oil program that is set forth in 10 C.F.R. § 212.78 (1981); ... [t]he decision frustrates and is contrary to the congressional purpose espoused in the Emergency Petroleum Allocation Act of 1973, as amended, to create an incentive for investment in enhanced oil recovery projects by producers; ...

*Id.* at 9–10.

In its memorandum decision the district court, after interpreting in accordance with the view of the DOI the gross proceeds rule which Pennzoil did not question apart from the EPAA issue it had raised, turned decisively to the latter issue:

> As for Plaintiff's argument that the DOE incentive program should implictly overrule the DOI regulation, the court finds that there is no legal basis for such a holding. Pennzoil's position is based mainly upon general policy considerations, and the court finds that these considerations are not sufficiently compelling to overrule the Secretary of the Interior's implicit statutory authority to determine the value of production for royalty purposes.

■ We agree with Pennzoil that its claim arose under regulations promulgated pursuant to the EPAA and that its right, if any, to relief stemmed from the alleged mandate of the TIP. But we also agree with the district court's rejection of that claim as insufficient in law to preclude the application and enforcement of the DOI's gross proceeds rule as interpreted by the district court and except for its EPAA claim otherwise conceded by Pennzoil.

Our jurisdiction to decide the issue of this case does not depend upon which way it is decided, the depth or effectiveness of the trial court's analysis, if any, or whether

---

lessee and DOE lacked authority to abrogate DOI regulations pertaining to royalty value determinations.
Ruling on appeal in MMS–81–DO28–DC5, Pennzoil Oil and Gas, Inc., Appellant, I Administrative Record, Tab 2, Ex. A at 1–2, 5.

**4.** General federal question jurisdiction also was asserted. The complaint added that "[t]his

Court also has jurisdiction under Section 23(b)(1) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1)." However, nowhere in the complaint did Pennzoil contend, apart from the asserted impact of the EPAA, that the DOI interpretation was invalid.

the EPAA claim is overwhelming, substantial, unpersuasive or even frivolous. Nor does it depend for a foundation upon a statute other than the EPAA. Appellees' reliance for the contrary upon *Texaco*, 616 F.2d at 1197–98, and *Atlantic Richfield Co.*, 769 F.2d at 778–79, is misplaced. The situation there involved the authority of certain agencies of the DOE to make orders as to which the 1977 Department of Energy Organization Act, 42 U.S.C. § 7192, made no provision for appeals to the TECA. As found by the majority in *Texaco*, 616 F.2d at 1198:

> The sole basis of the district court's decision and the sole concern on the appeal is the lower court's holding that FERC had review authority. The propriety of that holding, as the defendants concede, is not an EPAA question. It is a question which arises solely under the DOE Act.

Such a situation is in sharp contrast to the case here, where the district court's opinion did not refer to the Organization Act, the sole basis of Pennzoil's case was the claimed effect of the EPAA and its regulations and, aside from the essential statement of its context with DOI regulations, the only contested issue decided by the district court was that such claimed effect did not invalidate the DOI assessment of royalty in question. In the present case, the district court held that neither EPAA policy nor any EPAA regulation was sufficiently compelling to overrule the Secretary of Interior's statutory authority to determine the value of production for royalty purposes. A district court decision based solely upon claimed EPAA policy already has been accepted as jurisdictionally sufficient by both the TECA and the Supreme Court. *Isla Pet. Corp. v. P.R. Dept. of Cons. Affairs*, 811 F.2d 1511 (Em. App.1986), *cert. granted*, 484 U.S. 814, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987), *rev'd on other grounds*, 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988).

If this Court could not review the ruling of the district court because its decision was in the context of the DOI leasing program and the Fifth Circuit could not do so

because the dispute involves solely the effect of the EPAA issue, our position would be reminiscent of the fabled ordinance providing that each of two motorists approaching an intersection at the same time must stop and let the other pass.

We conclude with respect to the merits of the controlling issue, as the district court did, that neither the EPAA and its regulations, nor any policy considerations arising therefrom, precluded acceptance of the DOI's interpretation and application of its gross proceeds rule, and that the judgment of the district court to this effect is correct. This seems to us all this appeal is about. Whether there could be thought more is unimportant or moot since no appeal was taken to the Fifth Circuit.

Accordingly, the judgment of the district court is AFFIRMED.

THORNBERRY, Judge, dissenting.

The Temporary Emergency Court of Appeals (TECA) does not have jurisdiction over Pennzoil's appeal unless the district court interpreted or applied the Emergency Petroleum Allocation Act of 1973 (EPAA), the Economic Stabilization Act of 1970 (ESA), or regulations promulgated under these statutes. *See* EPAA, § 5(a)(1), 15 U.S.C.A. § 754(a)(1) (West 1976), *incorporating* ESA, § 211(a), 12 U.S.C.A. § 1904 note (West 1989); *United States v. Wyatt*, 680 F.2d 1080, 1083, 1085 (5th Cir.1982).[1] The majority and I agree on that first premise. *See* Majority Opinion at 1142. We part company, however, on the second premise: whether the district court *has* interpreted or applied the EPAA or a regulation promulgated under it.

Pennzoil is the lessee of an oil and gas lease located on the outer continental shelf off the coast of Louisiana. The Department of Interior (DOI) leased this land to Pennzoil under the authority of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C.A. § 1344 (West 1986). Pennzoil's lease agreement required it to pay the government, as royalty, sixteen and two-

---

1. Because the EPAA incorporated the ESA, an ESA issue is also an EPAA issue.

thirds percent of the value of the oil removed from the lease.

Ordinarily, Pennzoil's price for the first sale of the oil it removed from the continental shelf would have been restrained by regulations promulgated under the EPAA, but in the Energy Conservation and Production Act, enacted in 1976, Congress directed the President to allow a "qualified producer" to charge a price higher than the ceiling price for "tertiary enhanced recovery techniques." *See* 15 U.S.C. § 757(j)(1)(A) (Supp.1981). "Tertiary enhanced recovery techniques are higher cost production methods which maximize oil production from a depleting field." *Union Oil Co. v. United States Dep't of Energy,* 688 F.2d 797, 800 (Temp.Emer.Ct.App. 1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1186, 75 L.Ed.2d 433 (1983). The Department of Energy (DOE) administered the tertiary incentive program and promulgated regulations that allowed an oil producer to recover three-fourths of its expenses for this high-cost drilling by selling *any of the oil it produced* at the unregulated market price, including oil not produced on the property where the tertiary project was located. *See* 10 C.F.R. § 212.78(c) (1981), *supplemented by* 40 Fed.Reg. 51,148 (1979).

From August 1980 to January 1981, Pennzoil sold crude oil recovered from the outer continental shelf at unregulated prices in order to recover its expenses for tertiary enhanced recovery projects on other oil producing properties. But when Pennzoil remitted royalties to the DOI, it used the regulated price as the basis for its calculation. Pennzoil did this because the DOE regulation, 10 C.F.R. § 212.78, prohibits an owner of a royalty interest from sharing the revenue obtained from the tertiary incentive program unless the owner has invested in the enhanced recovery project. *See* Interpretation 1980–7, Fed. Energy Guidelines ¶ 56,487 (April 22, 1980). Under the DOI regulations, however, the government is entitled to a royalty interest

on tertiary incentives because these incentives were part of the revenue that Pennzoil received for selling its oil. *See* 30 C.F.R. § 250.64 (1979) (current version at 30 C.F.R. §§ 206.150 to 206.159 (1990)).

For the majority, the existence of the DOE regulation and the fact that Pennzoil has relied on it is enough to confer jurisdiction on this court, but in my view, we do not have jurisdiction unless the district court analyzed or interpreted that regulation. *See Sector Ref., Inc. v. Enterprise Ref. Co.,* 771 F.2d 496, 503 (Temp.Emer.Ct. App.1985) (noting that "[o]ur jurisdiction depends not on whether an EPAA issue exists, but on whether an EPAA issue was adjudicated"). This constraint flows implicitly from the TECA's *raison d'être.* The TECA exists "to assure uniform interpretation of the substantive provisions" of the EPAA and its regulations. *See Bray v. United States,* 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975). Our expertise is unnecessary if the district court has not interpreted the EPAA or its regulations.

I believe that the legion of cases which have discussed the TECA's jurisdiction also support a narrower view of its jurisdictional authority. Even if the EPAA or an EPAA regulation formed the basis for an appellant's cause of action, the Supreme Court, the circuit courts, and the TECA have consistently refused to allow the TECA to decide the appeal unless an interpretation of the statute or regulation was required. *See Bray,* 423 U.S. at 75, 96 S.Ct. at 310 (holding that the TECA did not have jurisdiction to review criminal contempt conviction of defendant who was being investigated for possible violations of the ESA); *In re Seneca Oil Co.,* 906 F.2d 1445, 1453–55 (10th Cir.1990) (holding that the TECA did not have jurisdiction to decide whether the DOE's claim of restitution for overcharges, pursuant to the ESA, was a fine, penalty, or forfeiture under the Bankruptcy Code);[2] *Atlantic Richfield*

---

**2.** One panel of the TECA held that the question whether a claim by the DOE should be subordinated to the claims of other creditors did arise under the EPAA. *See United States Dep't of*

*Energy v. West Texas Marketing Corp.,* 763 F.2d 1411, 1420–24 (Temp.Emer.Ct.App.1985) (Christensen, J., specially concurring). Although the analysis of *West Texas* may be inconsistent with

*Co. v. United States Dep't of Energy,* 769 F.2d 771, 778–79 (D.C.Cir.1984) (holding that even though the "underlying controversy" involved alleged violations of the EPAA, the question before the court involved an interpretation of the DOE Organization Act, and, therefore, the TECA's jurisdiction was not invoked); *United States v. Uni Oil, Inc.,* 646 F.2d 946, 949 (5th Cir.1981) (holding that the TECA did not have jurisdiction of appeal by defendants who were charged with conspiracy and fraud after they allegedly attempted to avoid the EPAA's price restrictions), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1254, 71 L.Ed.2d 446 (1982); *United States v. Zang,* 645 F.2d 999, 1002–03 (Temp.Emer.Ct.App. 1981) (same).

Conversely, the TECA has been held to have jurisdiction only in those cases in which an interpretation of the EPAA or its regulations resolved the case. *See Tully v. Mobil Oil Corp.,* 455 U.S. 245, 248, 102 S.Ct. 1047, 1050, 71 L.Ed.2d 120 (1982) (noting that the TECA has jurisdiction to interpret the EPAA to determine whether it pre-empted a state tax on the gross receipts of oil companies); *Isla Petroleum Corp. v. Puerto Rico Dep't of Consumer Affairs,* 811 F.2d 1511, 1513 (Temp.Emer. Ct.App.1986) (holding that the TECA had jurisdiction to examine the purpose of the EPAA in order to decide whether Puerto Rico could regulate the wholesale price of gas after the President's regulatory authority expired, or whether the field of price regulation was pre-empted by Congress's decision to leave the field), *rev'd on other grounds,* 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988).

The district court held that Pennzoil was required to include the excess revenue it received from the tertiary incentive program in calculating the royalty it owed to the government. *See Pennzoil Exploration & Prod. Co. v. Lujan,* 751 F.Supp. 602 (E.D.La.1990). The court did two things to

reach this conclusion. First, it interpreted the DOI regulation, 30 C.F.R. § 250.64, and concluded that the regulation required Pennzoil to calculate royalty based on all the revenue it received, regardless of the form or substance of that revenue. *See id.* at 605. Second, it concluded that the Secretary of Interior had "explicit statutory authority to determine the value of production for royalty purposes," and that Pennzoil's arguments were not sufficiently compelling to overrule that authority. *See id.* at 606.

The TECA only "takes jurisdiction over those issues which it has authority to decide." *Texaco, Inc. v. Department of Energy,* 616 F.2d 1193, 1197 (Temp.Emer.Ct. App.1979). Only the second of the district court's two foundations for its decision possibly could present a TECA issue. In its second premise, the court was holding that the DOE's tertiary incentive program could not supersede the authority of the Secretary of Interior to prescribe royalties for federal oil and gas leases on the outer continental shelf. But the court did not analyze the DOE regulation in order to make this decision. It did not say that Pennzoil's interpretation of the regulation to exclude royalty owners from the profits of the tertiary incentive program was wrong, nor did it say that the DOE intended to exclude the government from the ambit of its regulation. It said that the DOE did not have the statutory authority to affect the royalty required by the DOI.

The statute to which the court is referring is the OCSLA. *See id.* at 603. When it enacted the OCSLA, Congress gave the Secretary of Interior the power to enact regulations that would award oil and gas leases on submerged lands of the outer continental shelf through competitive bidding. *See* OCSLA, § 8(a)(1), 43 U.S.C.A. § 1337(a)(1) (West 1986). The DOE's tertiary incentive program cannot encroach on the Secretary of Interior's authority under

a narrow interpretation of the TECA's jurisdiction, it was noted that the provisions of the ESA and the EPAA and its regulations would have to be examined to determine whether "there could be restitution beyond the 'disgorgement' of profits illegally obtained by the oil company." *See*

*id.* at 1423. *But see id.* at 1429 (Sear, J., dissenting) (stating that the TECA did not have jurisdiction over the DOE's claim); *In re Seneca Oil Co.,* 906 F.2d 1445, 1455 (10th Cir.1990) (disagreeing with the jurisdictional analysis of *West Texas Marketing*).

the OCSLA because the Department of Energy Organization Act of 1977, which established the DOE, prohibits the DOE from promulgating any regulation that would restrict or limit the Secretary of Interior's authority to supervise federal oil leases. *See* § 303(a), 42 U.S.C.A. § 7153(a) (West 1983).[3] The TECA does not have jurisdiction to interpret either the OCSLA or the DOE Organization Act in order to determine whether the district court correctly held that the DOE did not have the statutory authority to affect the DOI's administration of federal oil leases on the outer continental shelf. *See Texaco*, 616 F.2d at 1196 (holding that the TECA does not have jurisdiction to interpret the DOE Organization Act); *Atlantic Richfield Co. v. United States Dep't of Energy*, 769 F.2d 771, 779 (D.C.Cir.1985) (same).

Consequently, I would hold that the TECA did not have jurisdiction over either of the foundations on which the district court based its decision. Pennzoil should have appealed the district court's decision to the Fifth Circuit and filed a protective appeal with this court. If the Fifth Circuit were to resolve the case in such a way that an interpretation of the DOE regulation becomes necessary, Pennzoil could then return to the TECA. *See Scallop Corp. v. Tully*, 705 F.2d 645, 650 (2d Cir.1983).

The jurisdictional mandate of the TECA is confusing and time-consuming, *see Texaco*, 616 F.2d at 1199 (Hoffman, J., dissenting), but we must operate within its confines. I believe that we would be exceeding those boundaries by asserting jurisdiction in this case. Therefore, I respectfully dissent.

---

**3.** The district court did not discuss the DOE Organization Act, but the relationship between the OCSLA and that Act was addressed by the Interior Board of Land Appeals, which first heard this case. *See* Pennzoil Oil & Gas, Inc., 109 I.B.L.A. 147, 149 (June 8, 1989).