**PENNZOIL EXPLORATION AND PRODUCTION COMPANY**

v.

Manuel LUJAN, Jr., Secretary, Department of the Interior, Barry A. Williamson, Director, Minerals Management Service, and Department of the Interior.

**Civ. A. No. 89–4391.**

United States District Court,
E.D. Louisiana.

June 8, 1990.

George J. Domas, Liskow & Lewis, New Orleans, La., for plaintiff.

Eneid A. Francis, Asst. U.S. Atty., New Orleans, La., Lisa K. Hemmer, U.S. Dept. of Justice, General Litigation Section, Washington, D.C., for defendants.

McNAMARA, District Judge.

Before the court are the Cross–Motions of Plaintiff, Pennzoil Exploration and Production Company ("Pennzoil"), and Defendants, Manuel Lujan, Jr., Secretary, Department of the Interior, Barry A. Williamson, Director, Minerals Management Service ("MMS"), and the Department of the Interior ("DOI"), for Summary Judgment. The Motions, set to be heard on Wednesday, May 30, 1990, are before the court on briefs, without oral argument. Having considered the memoranda of counsel and the applicable law, the court now renders its decision.

## PROCEDURAL HISTORY

Pennzoil is a lessee on certain federal offshore oil and gas leases issued pursuant to the Outer Continental Shelf Lands Act of 1953, 43 U.S.C. § 1331 et seq. (1982) ("OCSLA"). The OCSLA was enacted in 1953 to give the Secretary of the Interior authority to issue and manage oil and gas leases for tracts on the federal Outer Continental Shelf. Since 1953 the OCSLA has required that royalties must be paid to the United States as lessor, with the payments to be based on the "amount or value of the production saved, removed or sold." 43 U.S.C. § 1337(a) (1979).[1] The OCSLA further vests in the Secretary of the Interior the sole authority and responsibility to "prescribe such rules and regulations as may be necessary to carry out such provisions [of the Act]." § 1334(a).

Pursuant to this authority, the Secretary first promulgated a regulation to define the phrase "value of the production saved, removed or sold" for royalty purposes for offshore leases in 1954.[2] The regulation established that the "gross proceeds" accruing to the lessee would be the minimal amount upon which royalty would be calculated. The Secretary amended the rule in 1979, reaffirming the minimum royalty value as the gross proceeds accruing to the lessee:

> The value of production shall never be less than the fair market value. The value used in the computation of royalty shall be determined by the Director [of the MMS]. In establishing the value, the Director shall consider: (a) The highest price paid for a part or for a majority of like-quality products produced from the field or area; (b) the price received by the lessee; (c) posted prices; (d) regulated prices; and (e) other relevant matters. *Under no circumstances shall the value of production be less than the gross proceeds accruing to the lessee* from the disposition of the produced substances or less than the value computed on the reasonable unit value established by the Sec-

---

1. The statute was amended in 1986 with no change to this provision.

2. 19 Fed.Reg. 2659 (May 8, 1954).

retary. 30 C.F.R. 206.150 (1986) (emphasis added).

Pennzoil is the lessee of Lease OCS–G 2115 covering Eugene Island Block 330, offshore Louisiana. From August 1980 through January 1981, Pennzoil sold oil from this lease pursuant to the tertiary incentive program. This program allowed producers to sell oil at unregulated prices if they used techniques to recover extra oil from depleted oil sources. This recovery technique is made possible by costly enhancement technology that "would be uneconomical without additional price incentives." 15 U.S.C. § 757(j)(2) (West Supp. 1981). In 1976, the Department of Energy ("DOE") regulated crude oil prices[3], but the DOE's regulatory authority was amended by the Energy Conservation and Production Act, 42 U.S.C. § 6801 et seq. (1976) ("ECPA"), which required the President to provide additional incentives for tertiary enhanced recovery producing techniques. In accordance with the statute, the Secretary of Energy promulgated the regulation contained at 10 C.F.R. § 212.78 (1981), which provided for specific economic incentives to a "qualified producer" who participates in a "qualified tertiary enhanced recovery project." The oil at issue here was sold by Pennzoil pursuant to the ECPA and the federal regulation.

While Pennzoil sold oil produced from its lease at unregulated prices, Pennzoil paid its royalties, however, on the basis of the otherwise applicable ceiling price that it would have been entitled to receive under federal law. As a result, the DOI ordered Pennzoil to pay royalties on the actual sales price of its oil (i.e., the gross proceeds which accrued to Pennzoil from the sales).

Pennzoil appealed the order to Director of the United States Geological Survey[4] ("USGS"). On April 3, 1984, the Acting Director of the MMS denied Pennzoil's appeal and affirmed the order of the Conservation Manager. Pennzoil then appealed the decision of the Acting Director to the Interior Board of Land Appeals ("IBLA"), and the IBLA upheld the decision of the Acting Director. Pennzoil now seeks this court's review of the IBLA's decision, and this court affirms the IBLA decision.

## STANDARD OF REVIEW

■ Under the Administrative Procedure Act, 5 U.S.C. § 706 (1982), a court's review of a challenge to an agency decision is limited to scrutiny of the record for the existence of errors of law or absence of reasoned consideration of the record to support the factual conclusions reached. The statute enables a district court to set aside an agency action if that action is "arbitrary, capricious, an abuse of discretion ... [or] in excess of statutory jurisdiction, [or] authority...." 5 U.S.C. § 706(2).

■ Plaintiff's challenge in this case involves a question of law. When a court reviews an agency's legal determination, the court has full powers of review. 5 U.S.C. § 706; *Pennzoil Co. v. FERC*, 789 F.2d 1128, 1135 (5th Cir.1986). A district court, however, should give substantial deference to an agency's interpretation of a statute authorizing administration of that agency's programs. Specifically, "the question for the [reviewing] court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).[5] An agency's interpretation of its regulations is " 'of controlling weight unless plainly erroneous or inconsistent with the regulation[s].' " *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965), *quoting, Bowles v. Seminole Rock & Sand Co.*, 325

---

**3.** The DOE's authority was derived from the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq. (1973).

**4.** The United States Geological Survey was the Secretary's delegate with responsibility for the implementation of the OCSLA at the time the regulatory program was first promulgated. The responsibilities of the Survey were subsequently shifted to the Minerals Management Service.

**5.** *See also, United States v. City of Fulton*, 475 U.S. 657, 666, 106 S.Ct. 1422, 1427–28, 89 L.Ed.2d 661 (1986); *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974).

U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

## DISCUSSION

Pennzoil argues that the IBLA interpretation of the "gross proceeds" rule is unlawful because the MMS cannot impose royalties on tertiary incentive proceeds. It is undisputed that the regulation explicitly states that "[u]nder no circumstances shall the value of production of any of said substances for the purposes of computing royalty be deemed to be less than the gross proceeds accruing to the lessee from the sale thereof...." For decades, the DOI has interpreted this "gross proceeds" rule to mean that royalty will be assessed on the total consideration received by the lessee for the oil or gas. In *Wheless Drilling Co.*, 80 I.D. 599, 13 IBLA 21 (1973), the IBLA specified that royalty may be calculated upon the "actual consideration to be received by its lessee-seller under gas sales contracts with a buyer...." 80 I.D. at 603–04.

Pennzoil does not contest the validity of the regulation. Instead, Pennzoil contends that its situation should be considered an "isolated exception" from the well-settled rule that royalty is calculated upon the gross proceeds. Pennzoil further asserts that the DOE regulations that allowed for the tertiary price incentives should overrule the DOI "gross proceeds" rule by implication for two reasons: (1) the tertiary program was passed after the "gross proceeds" regulation; and (2) calculating royalty on the basis of the unregulated sales price will enable the DOI to benefit from the incentive program when Congress intended only for "qualified producers" (such as Pennzoil) to benefit from the DOE program.

■ The jurisprudence is clear that the Secretary of the Interior has the authority to establish royalty values of production from federal oil and gas leases. The Secretary has implemented his statutory authority in promulgating the "gross proceeds" rule, and this method provides the *"absolute* minimum value for computation of royalties." *Marathon Oil Co. v.*

*United States,* 604 F.Supp. 1375, 1384 (D.Alaska 1985), *aff'd,* 807 F.2d 759 (9th Cir.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987) (emphasis added). Agencies and courts that have reviewed this rule interpret it as the total consideration received by the lessee. *See e.g. Amoco Production Co.*, 29 IBLA 234, 236 (1977); *Wheless Drilling Co.*, 80 I.D. 599, 13 IBLA 21 (1973); *Kerr McGee Oil Indus., Inc.*, 70 I.D. 464 (1963).

■ The DOI assessed royalty based upon the actual consideration which Pennzoil received for its tertiary oil, which is entirely consistent with the gross proceeds concept. While Pennzoil's specific challenge has not been directly addressed by the agency before, the agency has determined that lessees may not exempt elements of the sales price for purposes of determining royalty value. *Knife River Coal Mining Co.*, 43 IBLA 104 (1979). The "statutory requirement to assess a royalty on the value of the production from the lease is not concerned with how the proceeds from the sale are allocated by the lessee." *Amoco Production Co.*, 29 IBLA 234, 238 (1977). As such, it is superfluous that Pennzoil may have used some of its receipts to pay for tertiary recovery projects since there is no authority to allow the DOI to assess royalties on a lower basis than the gross proceeds.

Plaintiff places great weight on the decision by the Board of Land Appeals in *Kentucky Oil & Refining Co., Inc.*, IBLA 82–56, A.R., Vol. II, Tab 8, Exhibit A. The *Kentucky* decision held that the DOI could not benefit from the tertiary incentive program when it takes oil in kind and sells it to another producer. In that case, Pennzoil had qualified under the incentive program and the USGS computed the resulting price increase and billed Kentucky (the purchaser of the oil) on the basis of a weighted price per barrel which reflected Pennzoil's tertiary incentive revenue. Kentucky appealed the charges, and the Board of Land Appeals reversed. The Board found that the DOI, as the royalty owner of the oil, should not benefit from the tertiary incentive program when it is taking oil in kind

and selling it to small refiners, such as Kentucky Oil. The Board concluded: "In summary then, 42 U.S.C. § 7152(b)(5), 10 C.F.R. 391.110(b)(2) and the Agreement for Royalty Oil Purchase all acknowledge that [Kentucky] *shall not be charged more than the regulated price.* Nevertheless, the U.S.G.S. has refused to recognize that tertiary incentive revenues are restricted by D.O.E. regulation to 'qualified producers.'" *Kentucky Oil,* at p. 7. This case is of no consequence here since the Board only dealt with whether the DOI could benefit from uncontrolled prices when it was taking oil in kind and selling it to a small refinery. The DOI in *Kentucky* was a seller of crude oil, subject to DOE price controls, and not a royalty owner. The case did not involve the valuation of a royalty interest, and it therefore has no bearing on the issue before this court.

 As for Plaintiff's argument that the DOE incentive program should implicitly overrule the DOI regulation, the court finds that there is no legal basis for such a holding. Pennzoil's position is based mainly upon general policy considerations, and the court finds that these considerations are not sufficiently compelling to overrule the Secretary of the Interior's explicit statutory authority to determine the value of production for royalty purposes. Accordingly, since the court holds that the agency's interpretation of the "gross proceeds" rule is a permissible construction of the regulation;

IT IS ORDERED that Defendants, Manuel Lujan, Jr., Secretary, Department of the Interior, Barry A. Williamson, Director, Minerals Management Service, and the Department of the Interior, Motion for Summary Judgment should be and is GRANTED. Plaintiff's, Pennzoil Exploration and Production Company, Motion for Summary Judgment, therefore, should be and is DENIED. Judgment shall be entered accordingly.